THE NATIONAL BANK OF LIMA, ADMR., APPELLEE, *v.* HANCOCK ET AL., APPELLANTS.

(No. 969—Decided December 7, 1948.)

*Messrs. Reid & Davison* and *Mr. Oren E. Dickason,* for appellee.

*Messrs. Meredith & Meredith, Messrs. Woolley, Rowland & Bridgewater* and *Mr. R. W. Kilbourne,* for appellants.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Probate Court of Allen county, in an action instituted therein by The National Bank of Lima, Lima, Ohio, administrator of the estate of Sadie D. Musser, deceased, who died intestate, to de-

termine the heirs of the decedent, entitled by the law of the state to inherit such estate. The judgment sustained general demurrers to the amended answers and cross-petitions of the defendants, claiming as heirs through the blood line, to the answers of the defendants, claiming to be the heirs of the decedent through the adoption line, and dismissed such answers and cross-petitions.

In the amended answers and cross-petitions, to which the demurrers were sustained, the following facts are pleaded:

Sadie D. Musser was born on July 23, 1876, near West Hope in Henry county, Ohio. Her mother was Rebecca Wilcox, an unmarried woman, and her father unknown. Decedent's mother, Rebecca Wilcox, on September 24, 1884, married one Michael Bonner, and of this marriage one child, Frank A. Bonner was born on October 17, 1885. Frank A. Bonner married Jessie Mae Romaker on February 29, 1908, and of this marriage defendant Thelma Bonner Hancock was born on March 6, 1909, defendant Charles N. Bonner was born on August 30, 1910, and defendant George E. Bonner was born on May 21, 1930. Of the marriage of Frank A. Bonner and Jessie Mae Romaker no other children were born. Sadie D. Musser survived Rebecca Wilcox and Frank A. Bonner, her mother and half brother, respectively.

Sadie D. Musser was adopted by Thomas and Rachael Dickerson of Lima, Ohio, on December 20, 1880, and the proceedings of the adoption are recorded in the Probate Court of Allen county, Ohio. Thomas and Rachael Dickerson had one son, William Dickerson, who died on April 30, 1946, without issue. Neither Thomas Dickerson nor Rachael Dickerson survived Sadie D. Musser.

Sadie D. Musser, on August 17, 1903, married Julius Custis Musser and no children were born of this marriage. Julius Custis Musser died leaving his surviving spouse and no children or their lineal descendants.

Decedent was known during her lifetime as Sarah Wilcox, Sarah Dickerson and Sadie D. Musser.

After the adoption of Sadie D. Musser by Thomas and Rachael Dickerson, Thomas Dickerson died leaving his wife, Rachael, surviving him. The maiden name of Rachael Dickerson was Rachael Disman and her mother and father were dead prior to the decease of Sadie D. Musser and she had the following brothers and sisters, George Disman, John Disman, Joseph Disman, Israel Disman, Elizabeth Disman, Anna Disman, Sarah Disman Gaunsaulus, and Hannah Disman Matthews.

All such brothers and sisters predeceased Sadie D. Musser.

The defendants Rose Ageter and William T. Ageter are the sole and only heirs at law of George Disman, and the defendant Fred S. Disman is the sole and only heir at law of John Disman.

Joseph Disman, Israel Disman, Elizabeth Disman and Anna Disman died without issue and left no surviving spouse or lineal descendants.

Hannah Disman Matthews and Sarah Disman Gaunsaulus predeceased Sadie D. Musser. Hannah Disman Matthews upon her decease left six children surviving her, to wit: Candace Matthews Richmond, since deceased, who left as her sole heirs and next of kin two children, Deane Richmond, London, Ohio, and Louise Richmond, London, Ohio, both of whom are now of legal age; May Matthews Briggs, Newark, Ohio; Herman Matthews, Miami, Florida; Loren Matthews,

Washington, D. C.; Harry Matthews, R. D., Athens, Ohio, and Cora Matthews, Kelso Rest Home, Sedalia, Ohio.

Defendants Joseph E. Linville, Marie G. Klinger, Myrtle G. Jones, Estella G. Hoffman, Florence G. Beck, Nana G. Quay, Lena G. Owens and Hoyt Gaunsaulus are the sole and only heirs at law of Sarah Disman Gaunsaulus.

Among the assets shown in the inventory of the estate of the decedent, Sarah D. Musser, is an amount of money represented as $10,869.98, which is partly represented by a certificate of deposit in The City Loan & Savings Company, in the amount of $6,220.94 and interest. The certificate of deposit is the identical money and deposit which the decedent received by inheritance from her brother by adoption, William Dickerson, at the time of his death on April 30, 1946, and from a joint and survivorship account between Sadie D. Musser and her adopting mother, Rachael Dickerson, in the amount of $3,110.47.

In addition to the foregoing, some of the other assets of the estate came to Sadie D. Musser from the Disman family, her adopting ancestors.

William T. Ageter and Rose Ageter claim to be heirs of the estate of the decedent, as lineal descendants of George Disman, one of the brothers of Rachael Disman Dickerson, the adopting mother of Sadie D. Musser.

Fred Disman claims to be one of the heirs of the estate of the decedent as a lineal descendant of John Disman, one of the brothers of Rachael Disman Dickerson.

Loren Matthews, Harry Matthews, Cora Matthews, Herman Matthews, Mae Matthews Briggs, Deane Richmond and Louise Richmond claim to be heirs of the estate as lineal descendants of Hannah Disman

Matthews, one of the sisters of Rachael Disman Dickerson.

Joseph E. Linville, Marie G. Klinger, Myrtle G. Jones, Estella G. Hoffman, Florence G. Beck, Nana G. Quay, Lena G. Owens and Hoyt Gaunsaulus claim to be heirs of the estate as lineal descendants of Sarah Disman Gaunsaulus, one of the sisters of Rachael Disman Dickerson.

Thelma Bonner Hancock, Charles N. Bonner and George E. Bonner claim to be heirs of the estate through the blood line by reason that they are the only children and heirs at law of Frank A. Bonner, brother of the half blood of the decedent.

The general demurrers of the defendants of the blood line to the amended answers and cross-petitions of the defendants of the adoption line effectively raise the issue as to the right of succession and inheritance to the property of the decedent, as between the blood kin and the adoption kin.

The judgment of the Probate Court sustaining the demurrers and dismissing the amended answers and cross-petitions constituted an adjudication that the adoption line had no right of succession or inheritance to any of the property of the decedent.

The questions raised by the general demurrers are: First, whether, under the laws of Ohio when an adopted child dies intestate without a spouse or issue surviving her, intestate property passes to her blood kin or to her adoption kin; and, second, if it is the rule of law that such intestate property passes to the blood kin of the decedent, whether an exception exists to such rule whereby property inherited by the deceased adopted child from her adopting mother and her brother by adoption, identifiable at death of decedent as identical, passes to the adoption kin of decedent.

To determine these questions it is necessary to re-

view the statute relating to legal rights and obligations on adoption, which from time to time has been designated as Section 3140, Revised Statutes, Section 8030, General Code, Section 10512-19, General Code, and is now designated as Section 10512-23, General Code.

The first statute relating to legal rights and obligations on adoption was passed in 1859 (56 Ohio Laws, 83). It provided:

"* * * the natural parents shall be divested of all legal rights and obligations in respect to such child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them, and shall be, to all intents and purposes, the child and legal heir of his or her adopter or adopters, entitled to all the rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock: provided, that on the decease of parents who have adopted a child or children under this act, and the subsequent decease of such child or children without issue, the property of such adopting parents shall descend to their next of kin, and not to the next of kin of such adopted child or children."

This adoption law remained unchanged until 1891. The change made at that time (88 Ohio Laws, 556) did not in any way modify the provisions of the original law hereinbefore quoted.

The law was again amended in 1921 (109 Ohio Laws, 179) to read as follows:

"* * * the natural parents of the child, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them; and the child shall be free from all legal obligations of obedience or otherwise to such parents; and the adopting parent or parents of the child shall be invested with every legal right in respect to obedience and

maintenance on the part of the child as if said child had been born to them in lawful wedlock; and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; and provided also, on the death of the adopting parent or parents and the subsequent death of the child so adopted, without issue, the property of such deceased parent or parents shall descend to and be distributed among the next of kin of said parent or parents and not to the next of kin of the adopted child; and provided, also, if such adopting parent or parents shall have other child or children, then the children by birth and adoption shall, respectively, inherit from and through each other as if all had been children of the same parents born in lawful wedlock. Nothing in this act shall be construed as debarring a legally adopted child from inheriting property of its natural parents or other kin.''

The next revision in the law was made in 1931, effective January 1, 1932 (114 Ohio Laws, 474).

The only pertinent change in this revision was that, after the phrase relating to the incapacity of the adopted child of inheriting property expressly limited to the heirs of the body of the adopting parent or parents, the following clause was added:

''But shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing.''

Effective January 1, 1944 (120 Ohio Laws, 440), there was another revision.

The statute as last revised contains in the main the same provisions as the 1932 revision, except that the proviso, that the property of the adopting parents shall descend to the next of kin of the adopting parents, rather than to the next of kin of the adopted child, on the death of such adopting parents and the subsequent death of the adopted child without issue, is omitted.

As material changes in the statute as it existed at the time of the adoption in 1880 occurred prior to the death of the adopted child, it is necessary to determine whether the rights of succession and inheritance of the parties to this action are governed by the statute as in effect at the time of the adoption, or the statute as in effect at the time of the death of the adopted child.

In the case of *Rodgers, Jr., Gdn.,* v. *Miller, Trustee,* 43 Ohio App., 198, 182 N. E., 654, it was held, in paragraph three of the syllabus, that the rights of adopted children to take under a trust deed antedating the adoption were fixed by statute in effect when they were adopted, not the statute as subsequently amended.

It will be noted that this holding applies only to the rights of adopted children to take under a trust deed and has no application to their right of succession and inheritance under statutes of adoption and statutes regulating descent and inheritance.

We have been unable to find any reported case in Ohio determining whether in a case such as the instant one the adoption statute as in effect at the time of adoption or the adoption statute as in effect at the time of the death of the adopted child governs the rights of succession and inheritance, but we have found a Wisconsin case determining this question, entitled *In*

*Re Estate of Hood,* 206 Wis., 227, 239 N. W., 448, and which is cited in 2 Corpus Juris Secundum, 458, Section 64.

In a well considered opinion in that case, the court held that a statute enacted after adoption and in force at the decease of the adopted child determines succession and inheritance.

The reasoning upon which this determination is based is as follows:

A statute relating to succession and inheritance to and from adopted children does not give to past acts a new effect upon mutual rights or liabilities. Nor does it change or affect existing rights. Rights by inheritance in an estate do not accrue until the death of the owner intestate. A law providing for the future descent of property is prospective. The statute in question, at its passage, related to future inheritances by adopted children. It conferred or took away no present right. A law of inheritance making a change in the prior law as to adopted children—a numerous, permanent, existing class of persons—does not differ in principle from a law making a change in the rules of inheritance of property by force of the relationship of husband or wife or through the relationship between other classes, and no different rule of construction of a statute effecting such change is required.

We adopt the holding of the Supreme Court of Wisconsin, above mentioned, as a correct statement of the law applicable to the adoption statutes of Ohio.

We will now consider the proper construction of the Ohio adoption statute so far as it relates to the succession and inheritance of intestate property.

The statute in its original form was first considered by the Supreme Court of Ohio, in the case of *Upson, Admr.,* v. *Noble,* 35 Ohio St., 655. That case involved

the determination of the question whether the personal estate of an adopted child, dying intestate and leaving its natural mother, its adopting parents and children of the adopting parents surviving, passed to the natural mother or to the adopting parents and their children born in lawful wedlock.

The court decided that such property passed to the natural mother, to the exclusion of the adopting parents and their children born in lawful wedlock.

In its opinion, the court based its decision on the following propositions of law:

1. The right of succession to intestate property, in this state, is regulated by statute law.

2. The rightful distribution of the intestate property of an adopted child depends upon the construction of the statute of adoption and the statute regulating the descent and distribution of intestate property, which statutes are *in pari materia*.

3. The statute of adoption, so far as it changes the general course of descent and distribution of intestate property and ignores all merit on account of blood, should be strictly construed.

4. The General Assembly, in the enactment of the statute of adoption, other than the proviso therein which explicitly created rights of inheritance varying from those incident to the natural relationship between the adopted child and its kindred by blood, was dealing with personal rights and duties growing out of the relation of parent and child by transferring them from the natural to the adopted relative.

5. From the proviso of the adoption statute, which is in these words, "provided, that on the decease of parents who have adopted the child or children under this act, and the subsequent decease of such child or children without issue, the property of such adopting parents shall descend to their next of kin, and not to

the next of kin of such adopted child or children," it must be inferred that the legislative intent was that, but for the proviso (which was in the statute of adoption of Ohio until January 1, 1944), the inheritance would be transmitted from an adopted child to his or her own kindred of blood, and that this proviso was enacted for the purpose, under the circumstances stated, to preserve an inheritance from the adopting parents, to pass through or from the adopted child, to the next of kin of the adopting parents.

The above-mentioned propositions of law are in conformity with the general rule of law stated in 1 American Jurisprudence, 654, Section 55, as follows:

"The view generally taken, however, has been that as adoption was unknown to the common law, and rests upon statutes entirely, an adoption varies the incidents of the natural relationship between the adopted child and its kindred by blood only as the statute explicitly so provides, and, accordingly, that the property of an adopted child will descend to its relations by blood rather than to its relations by adoption unless the statute, by explicit provision or necessary construction, excludes the former in favor of the latter."

The decision in the *Upson case* was approved in the case of *Phillips, Exr.,* v. *McConica, Gdn.*, 59 Ohio St., 1, 51 N. E., 445, 69 Am. St. Rep., 753, in the following language:

"It was well said in *Upson* v. *Noble,* 35 Ohio St., 658, that in passing the adopting statute 'the Legislature was dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation.'

"The statute enables the adopted child to inherit from its adopter, but not through him. The statute does not make the adopted child the heir of the ancestors of its adopter, and the right of the adopted child

to inherit cannot be extended beyond where the statute has fixed it. The statute in this regard must be strictly construed, as held in 35 Ohio St., 658.''

The *Upson* and *Phillips cases, supra,* were approved and followed in the case of *Russell* v. *Jordan*, 58 Colo., 445, 147 P., 693, the statute relating to adoption in the state of Colorado having been adopted bodily from the Ohio statute relating to the same subject matter.

The Ohio adoption statute, in its original form, was further considered by the Supreme Court of Ohio, in. the case of *Ransom, Admr.,* v. *New York, Chicago & St. Louis Ry. Co.,* 93 Ohio St., 223, 112 N. E., 586, L. R. A. 1916E, 704, in which it was held that under the federal statute for recovery of damages for wrongful death, by personal representative, and the Ohio statute to the same effect, the words, ''parents,'' and, ''children,'' are used without any limit or qualification, and include adopting parents and adopted children as the natural parents and natural children; and that under the Ohio adoption statute the adopting parents, as against the wrongdoer, have the legal right to recover for the wrongful death of their adopted child.

It was held further that in applying the adoption statutes the court should give effect to the sound and wholesome humanitarian policies designed to be promoted by their enactment.

But the holding that the adopting parents are entitled to recover for the wrongful death of the adopted child is predicated solely upon the proposition that the statute of adoption prescribed that the natural parent is ''divested of all legal rights,'' one of which is the right to recover through the personal representative damages for the wrongful death of a son, and that the natural parent being divested of such right, such legal rights vested in the adopting parents.

The question of the right of succession and inheritance to intestate property was not involved or considered in the decision, nor were the above-mentioned decisions of the Supreme Court relating to the right of succession and inheritance of intestate property, mentioned or considered, so it is clear that in its decision the court did not intend to, and did not, overrule or modify its former holdings, and that the rule of construction adopted by it has no application to rights of succession and inheritance under such statute.

The statute, in its original form, was further considered by the Supreme Court in the case of *Kroff* v. *Amrhein*, 94 Ohio St., 282, 114 N. E., 267.

That case involved the question of the right of succession and inheritance to real estate of adopting parents who died intestate subsequent to death of adopted daughter, as between the devisee of the daughter of such adopted child, who survived her mother, and the kin of the deceased adopting parents, in which it was held that the devisee of the child of the adopted child inherited the property to the exclusion of the kin of the adopting parents, as the facts in the case did not bring it within the proviso to the adopting statute hereinbefore quoted.

In the opinion in that case, Judge Wanamaker, who wrote the opinion in the case last above mentioned, recurred to the principle that the court should apply the language of the adoption statute in the broad and humane spirit in which it was written into the law and policy of this state.

That legal conclusion was not necessary to a decision of the case and was obiter. But giving it full force and effect, the application of such rule of construction is limited to provisions designed for the benefit of the adopted child and its issue.

In the *Kroff case,* the decisions of the Supreme

Court, hereinbefore mentioned, relating to the rights of succession and inheritance, were not mentioned or considered, so it is clear that in the *Kroff case* the court did not intend to, and did not, overrule or modify its former holdings.

After diligent search we find no case in which the decision in the *Upson case,* as to the proper construction of the adoption statute so far as it relates to rights of succession and inheritance, is questioned, overruled or modified, so we must conclude it establishes the law of Ohio on the subject.

However, the claimant kin of the adopted child decedent through the adoptive line contend that the *Upson case* is not applicable to the construction of the adoption statute in its present form, by reason of the amendments to such statute hereinafter mentioned, which became effective after that case was decided, and that under the present form of the statute they have the right of succession and inheritance to the property of decedent, to the exclusion of her kin by blood.

The first amendment on which they rely as sustaining this contention, is the amendment of the statute in 1921, whereby the phrase, "the natural parents * * * shall * * * be divested of all legal rights and obligations in respect to the child", was changed to read "the natural parents of the child, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them."

They argue that this amendment had the effect of cutting off the child for every purpose from her natural blood kin, including her right to transmit by inheritance to such blood kin.

The phrase, as amended, does not explicitly prescribe rights of inheritance varying from those incident to the natural relationship between the adopted

child and its kin by blood, so that, under the *Upson case,* the change in the form of the statute cannot be construed as affecting rights of succession and inheritance, and its application is limited to rights other than rights of succession and inheritance.

The second amendment on which they rely as sustaining their contention, is the amendment in the adoption act of 1921, prescribing "if such adopting parent or parents shall have other child or children, then the children by birth and adoption shall, respectively, inherit from and through each other as if all had been children of the same parents born in lawful wedlock." Under that provision, it is argued collateral kin through the adoptive line have the right of succession and inheritance from the adopted child.

The descent and distribution of intestate property is governed by the provisions of Section 10503-4, General Code. The part thereof pertinent to a consideration of this contention reads as follows:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course: * * *

"6. If there be no spouse, no children or their lineal descendants, and no parent surviving, to the brothers and sisters, whether of the whole or of the half blood of the intestate, or their lineal descendants, per stirpes."

This statute is *in pari materia* with the adoption statute, so where the words, "brothers and sisters," are used, it is clear that such phrase is intended to include brothers and sisters by adoption.

It will be noted in the instant case that, as the adopted child decedent left no spouse, no children or their

lineal descendants, and no parents surviving, the provisions of subdivision six of Section 10503-4, applies to such rights of inheritance as the brother by adoption may have had to inherit from and through the decedent.

It will be further noted that under such subdivision, such right of inheritance of the brother by adoption is limited to him and his lineal descendants, per stirpes, and that such right does not extend to his collateral heirs.

As the brother by adoption predeceased the decedent adopted child, leaving no issue surviving him, any right of inheritance through him to the intestate property of his sister by adoption expired upon his decease, and the claimant kin of the adoptive line, not coming within the class of lineal descendants of the brother by adoption, are not entitled to claim any right of inheritance through him.

The third amendment upon which the claimant kin of the adoptive line rely as sustaining their contention, is the amendment in the act of 1921, prescribing:

"Nothing in this act shall be construed as debarring a legally adopted child from inheriting property of its natural parents or other kin."

In the statute as amended in 1921, new channels of inheritance were explicitly prescribed for the adopted child through his adoptive parents, and from them through his brothers and sisters by adoption, and for his brothers and sisters by adoption by and through the adopted child.

The rights of inheritance incident to the natural relationship between a child and its kindred by blood are reciprocal. Their character may be changed only by explicit provisions of statute.

As the rules of construction prescribed by the amendment preserve to the adopted child the right of in-

heritance from its natural parents and other blood kin, it impliedly preserves to the parents and other blood kin, the right of inheritance from the child except as otherwise specifically prescribed, as above mentioned.

Thus, the amendment referred to simply constitutes a statutory affirmation of the rule of law, established by the *Upson case*, that the parents and blood kin of the adopted child have the right of inheritance and succession to his or her intestate property, except as otherwise explicitly prescribed.

The fourth amendment of the adoption statute, upon which the claimant kin of the adoptive line rely as sustaining their contention, is the amendment to the adoption act, effective January 1, 1944, repealing the original proviso to the adoption act mentioned in the *Upson case*.

Although the decision in that case was to some extent predicated on the existence of the proviso, it was by reason of the proviso explicitly prescribing rights of inheritance varying from those incident to the natural relationship between the adopted child and its kindred by blood.

Since the *Upson case*, many of the amendments to the original statute prescribe rights of inheritance varying from those incident to the natural relationship between the adopted child and its kindred by blood, and although the proviso mentioned has been repealed, these amendments are in effect, so that the rules of construction in that case and the rules of law established in that case are applicable to the statute in its present form, and kin of the adoptive line may inherit from an adopted child only where the statute explicitly so prescribes.

As above stated, there is no explicit provision of the adoption statute or the statute of descent and distribu-

tion under which the claimants of the adoptive line who are collateral kin of the decedent have any right of succession or inheritance from or through the decedent.

If the proviso in the original statute had not been repealed, the adoptive kin of the decedent would have the right of succession and inheritance to the specific property the decedent inherited from her adoptive mother, but not to the property inherited from her brother by adoption. However, the statute of adoption, as in effect at the time of the death of the decedent, contained no provision explicitly prescribing such right of inheritance, so in the absence of such explicit provision, the right of succession and inheritance to such property inures to and is vested in the kin of the blood of the decedent.

For the reasons mentioned, we find no error in the judgment of the Probate Court, and the same is, therefore, affirmed.

*Judgment affirmed.*

JACKSON, P. J., and MIDDLETON, J., concur.