Defendant-appellant, Angela Reese, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, finding that her daughter, D'Anna Reese, is a dependent child. We affirm.
On January 9, 1998, the Butler County Children Services Board ("BCCSB") filed a complaint alleging that D'Anna (aka Deanna) Reese, born November 19, 1997, was a dependent and abused child.[1] BCCSB alleged that D'Anna's brother, D'Anthony Reese, had been diagnosed with multiple fractures consistent with abuse in 1995 (at approximately two months old) and legal custody had been awarded to his maternal grandmother. BCCSB also alleged that appellant's husband, Anthony Reese ("Reese"), had been convicted of felony domestic violence and that appellant had indicated that Reese would be returning to her household upon his release from prison. BCCSB alleged that both parents lacked parenting skills and requested a disposition of temporary custody to D'Anna's maternal grandmother.
An interim protective order was issued on January 14, 1998 granting temporary custody to D'Anna's maternal grandmother and ordering no contact of any kind between D'Anna and her father, Reese. The order further provided for no unsupervised contact between D'Anna and appellant.
On June 19, 1998, appellant filed a motion to dismiss complaint, motion to strike, and motion in limine. Appellant argued that the factual circumstances concerning D'Anthony's abuse and dependency case could not be relitigated. Appellant moved to strike any allegation based upon the facts of that case other than the court's findings of fact and conclusions of law. Appellant also argued that D'Anna's dependency could not be established based upon a risk of abuse by Reese, because Reese was under a legal disability from returning to the household based upon the conditions of his parole. Appellant's motions were denied by the magistrate on August 4, 1998.
The trial court held an adjudicatory hearing on August 6, 1998. Appellant's objections to the magistrate's determinations on her motions were overruled. Appellant stipulated to certain documentary evidence, without waiving her right to appeal the disposition of her pretrial motions; no testimony was taken at the hearing. Documents pertaining to D'Anthony's abuse and dependency case were admitted, as well as criminal records concerning both parents and a July 1998 psychological report concerning appellant conducted by Dr. Charles Lee.
The trial court found that there was clear and convincing evidence to find that D'Anna was a dependent child. D'Anna's maternal grandmother was granted legal custody. Appellant has raised two arguments which we construe as assignments of error. See Loc.R. 11(B)(3).
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER BECAUSE IT PERMITTED BUTLER COUNTY CHILDREN'S SERVICES BOARD TO RELITIGATE AN OLDER SIBLING'S CASE BY ADMITTING EVIDENCE BARRED BY THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER BY FINDING THAT THE CHILD WAS AT RISK OF BEING ABUSED BY A SUSPECTED ABUSER UNDER LEGAL DISABILITIES STEMMING FROM HIS INCARCERATION AND PAROLE THAT PREVENTED HIM FROM HAVING CONTACT WITH THE CHILD.
Appellant argues that there was insufficient legally admissible evidence to support the trial court's dependency finding because the facts of D'Anthony's case could not be relitigated. Appellant also argues that because Reese was prohibited by the terms of his parole from residing with appellant, there was no prospective risk to D'Anna in appellant's home. We find there was sufficient credible and legally admissible evidence of dependency.
R.C. 2151.04 defines a "dependent child" to include any child:
 (A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;
 (B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parent, guardian, or custodian;
 (C) Whose condition or environment is such as to warrant the state, in the interest of the child, in assuming the child's guardianship;
(D) To whom both of the following apply:
 (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or another child who resides in the household is an abused, neglected, or dependent child.
 (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
The right to rear a child "is an essential' and' basic' civil right and parents must be afforded every procedural and substantive protection the law allows.' " In the matter ofCoffey Children (Jan. 26, 1998), Madison App. No. CA97-05-021, unreported, quoting In re Hayes (1997), 79 Ohio St.3d 46, 48. However, a parent's interest in the care, custody, and management of his or her child is secondary to that of the best interest of the child. In re Shaeffer Children (1993), 85 Ohio App.3d 683,690. The state must prove dependency by clear and convincing evidence. In re: Overbay (Mar. 3, 1997), Butler App. No. CA96-05-101, unreported. Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief as to the facts sought to be established. In re: Weaver
(1992), 79 Ohio App.3d 59, 64. As a reviewing court, our inquiry is limited to whether sufficient credible evidence exists to support the trial court's determination. In re PieperChildren (1991), 74 Ohio App.3d 714, 722. After a thorough review of the evidence, we find that there was sufficient credible evidence to support the trial court's determination that D'Anna was a dependent child.[2]
Appellant argues that the previous determination which did not name a perpetrator of D'Anthony's abuse and dependency wasres judicata for the determination of D'Anna's dependency. We find that res judicata did not prevent the trial court from considering relevant evidence concerning D'Anthony's abuse. Under the doctrine of res judicata, a matter adjudged is taken for truth and a judgment rendered without fraud or collusion by a court of competent jurisdiction is conclusive of the rights, questions, and facts in issue, as to the parties or their privies in any subsequent action. In re Pieper Children (1993),85 Ohio App.3d 318. Appellant argues that it was improper to admit evidence concerning D'Anthony's case beyond the agreed disposition because it "prejudiced her case" by permitting BCCSB to use "inadmissible evidence to support inadmissible allegations [sic] concerning a matter already litigated."
First, we cannot agree that BCCSB was attempting to relitigate a matter which had been previously litigated. Appellant and BCCSB had agreed to a finding that D'Anthony was an abused and dependent child. They had further agreed that no perpetrator of the abuse would be named and that appellant's mother would be named D'Anthony's legal custodian. There was no stipulation that the abuse had not occurred, merely a stipulation that a perpetrator was not named. Under these circumstances, the facts establishing that a sibling had been abused in appellant's household were relevant to a determination of the risk to D'Anna and were not barred by the doctrine of res judicata. See In re Pieper Children, 85 Ohio App. 3
d at 323 (adjudicated neglect may be considered in a subsequent proceeding as well as subsequent conduct to the extent that it subjects children to possibility of further abuse). Furthermore, we find that even without any of the disputed evidence concerning D'Anthony, there was sufficient credible evidence to support the trial court's determination that D'Anna was a dependent child. The criminal records of both parents were certainly relevant and admissible, as was the report of Dr. Charles Lee, a psychologist who evaluated appellant.
Dr. Lee evaluated appellant on July 10, 1998. Dr. Lee found that appellant stated she did not believe that her husband was the perpetrator of D'Anthony's injuries, although BCCSB "tried to pin it on him." Dr. Lee had previously evaluated appellant and noted that she remained "entrenched in an orientation where she blames others for her problems, exhibits bouts of depression and anger, and becomes overly reliant and dependent upon others." During an earlier assessment, appellant had tested in the mildly mentally retarded range, but Dr. Lee noted that it was more likely that she functioned in the borderline range. The likelihood of a substance abuse disorder was also noted in her testing. The report noted that appellant and Reese had been reunited for a week after his release from prison. Reese has since moved to his brother's residence. Dr. Lee noted that appellant could benefit from ongoing treatment to address her personality orientation and likely problems with anger but would need to commit to therapy.[3] Dr. Lee stated that the prognosis was "very guarded that [appellant] can become a viable, independent caretaker of her children." These findings clearly support the trial court's determination that D'Anna was a dependent child pursuant to R.C. 2151.04(C).
Appellant also argues that the potential risk to D'Anna from Reese was not a basis for a dependency finding because Reese was under a legal disability under his parole terms from returning to appellant's household. This argument has very little force, however, because admissible evidence established that Reese had spent a week in appellant's home after his release from prison, despite the legal disability imposed by the terms of his parole. Furthermore, appellant indicated to Dr. Lee that she wanted "to be a family again," although she claimed she would "boot Anthony out" if it would facilitate regaining custody of her children. Under these circumstances, the trial court could consider that D'Anna was at risk in appellant's household.
The state need not subject a child to a potentially detrimental environment. Ohio courts have held that newborn infants can be dependent even before they have been in their parents' custody. See In re Bishop (1987), 36 Ohio App.3d 123;In re Smart (1984), 21 Ohio App.3d 31; In re Campbell (1983),13 Ohio App.3d 34. Similarly, the trial court could find that D'Anna was dependent before subjecting her to the risk that appellant would allow Reese to return to her home while D'Anna was present. The fact that Reese was under a legal disability is not controlling. Reese has previously been found guilty of probation violation. He has also been convicted several times on failure to appear charges.
Therefore, substantial credible evidence supports the trial court's finding that D'Anna is a dependent child. Appellant's arguments concerning disputed evidence are without merit, and the assignments of error are overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] On February 13, 1998, BCCSB amended the complaint to withdraw the abuse allegations.
[2] We note that there is a significant difference between a court's finding of dependency and granting of "legal custody" and "permanent custody." In the matter of Coffey Children (Jan. 26, 1998), Madison App. No. CA97-05-021, unreported. Appellant retains residual rights to her child (visitation, consent to adoption, etc.) as outlined in R.C. 2151.011(B)(10).
[3] We note that appellant's three separate convictions (for disorderly conduct, obstructing official business, and criminal trespass) in the year just prior to D'Anna's birth are further evidence of her problematic personality orientation.