### In re PIEPER CHILDREN.

[Cite as *In re Pieper* (1991), 74 Ohio App.3d 714.]

Court of Appeals of Ohio,
Preble County.

No. CA90–10–019.

Decided July 8, 1991.

*Rebecca J. Ferguson,* Prosecuting Attorney, for appellee Preble County Children's Services.

*Lyn A. Cunningham,* for appellant Roy Pieper.

*Gary L. Sheets,* for appellant Erin Pieper.

*George J. Earley,* guardian ad litem.

WALSH, Judge.

Appellants, Roy and Erin Pieper, separately appeal a judgment of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of their three children to Preble County Children's Services and divesting them of all parental rights.

On April 20, 1989, Preble County Children's Services ("PCCS") filed a complaint alleging the Piepers' three children, Laura, age 6, Jessica, age 4, and Samantha, age 3, to be neglected and/or dependent. The allegations contained in the complaint included spousal abuse of Erin by Roy, physical abuse of Samantha by Roy, Erin and Roy's history of emotional instability, and Roy's inability to maintain a clean home while Erin was in the hospital. At the time of the filing, Jessica and Samantha were in the care of Roy's sister, while Laura, who suffers from cerebral palsy, was staying with a teacher. The court granted temporary custody of the children to PCCS later that day.

On April 24, 1989, the court held a shelter care hearing, wherein it appointed a guardian ad litem for the children and appointed counsel for the Piepers. Based upon the evidence presented at the hearing, the court ordered the children to remain in shelter care and continued PCCS's temporary custody.

PCCS filed an amended complaint on August 17, 1989, which contained new allegations that Roy sexually abused Jessica and Samantha, in addition to reasserting the claims set forth in the original complaint. Both Roy and Erin subsequently entered pleas denying the allegations. After counsel for the Piepers had either withdrawn or resigned from the case on four separate occasions, the bench trial commenced on June 25, 1990. Due to the vast

amount of testimony given, the court twice recessed the matter until August 21, 1990.

In a decision and entry dated September 11, 1990, the court found all three children to be neglected as defined by R.C. 2151.03. Jessica and Samantha were further deemed sexually abused children pursuant to R.C. 2151.031(A), and Samantha was additionally declared an abused child per R.C. 2151.031(C). The court held a dispositional hearing regarding PCCS's request for permanent custody on September 13, 1990. In its September 25, 1990 entry, the court granted the request and divested Roy and Erin of all parental rights.

Erin and Roy appealed separately in a timely manner. Erin's brief presents the following assignments of error for review:

Assignment of Error No. 1:

"The juvenile court erred to the prejudice of appellant Erin Pieper when it assumed jurisdiction, when it initially removed Laura, Jessica and Samantha Pieper from appellant's care, custody, and control, and when it subsequently held an adjudicatory hearing to terminate appellant's parental rights and duties, because the facts and circumstances alleged in the original and amended complaints failed to set forth acts and omissions upon appellant's part which occurred on or about the date alleged in the complaint which demonstrated neglect by appellant or inadequate care for her children."

Assignment of Error No. 2:

"The juvenile court erred to the prejudice of appellant by including evidence of the best interest of the Pieper children in its adjudication decision and relying upon the children's best interest as justification for its adjudication."

Assignment of Error No. 3:

"The juvenile court erred to the prejudice of appellant in using appellant's alleged failure to cooperate with and her resentment of Children's Services, which occurred following the filing of the initial and amended complaints, as a justification for finding the Pieper children abused and neglected."

Assignment of Error No. 4:

"The juvenile court twice erred to appellant's prejudice in admitting evidence attacking appellant's credibility in violation of Evid.R. 608(B)."

Assignment of Error No. 5:

"The adjudication and disposition in this case are against the manifest weight of the evidence."

Roy submits the following as error:

Assignment of Error No. 1:

"The trial court erred to allow at the adjudication stage of the proceedings evidence of what was in the children's best interests."

Assignment of Error No. 2:

"The trial court erred to admit the hearsay statements of appellant's children in that their admission violated appellant's constitutional right of confrontation."

Assignment of Error No. 3:

"The trial court erred to allow the state's witness to testify that the child hearsay declarent [*sic*] was capable of accurately relating personal experiences and that she had been truthful about her claim of sexual abuse."

Assignment of Error No. 4:

"Appellant Roy Pieper was denied effective assistance of counsel in that his trial counsel failed to object to hearsay statements tending to show that appellant had sexually abused his own children and in failing to object to the testimony of a state's witness as to whether a hearsay declarent [*sic*] was telling the truth."

Assignment of Error No. 5:

"The trial court erred to find that the children were abused, neglected, and dependent in that its finding was against the manifest weight of the evidence."

In her first assignment of error, Erin contends that the allegations set forth in the complaint and amended complaint failed both to establish that the juvenile court had jurisdiction and to apprise her of the claims against her. Specifically, she points to the allegations relating to a prior history of drug involvement, passing bad checks, and admittance to a battered women's shelter as being vague and conclusory pursuant to Juv.R. 10 and R.C. 2151.27.

Juv.R. 10(B) provides that a complaint must "state in ordinary and concise language the essential facts which bring the proceeding within the jurisdiction of the court * * *." Where a complaint contains an allegation that a child is abused, neglected or dependent, R.C. 2151.27(A) requires the complaint to allege the particular facts upon which the allegation is based. In order to avoid the filing of lengthy complaints, however, this court has held that Juv.R. 10(B) does not "force a complainant to state in the complaint every fact surrounding each incident described." *In re Sims* (1983), 13 Ohio App.3d 37, 43, 13 OBR 40, 46, 468 N.E.2d 111, 118.

Upon reviewing the allegations set forth in both the complaint and amended complaint, we find they have the specificity required by R.C. 2151.27 and

Juv.R. 10. Although the allegations do not provide exact dates in several instances, they sufficiently notified Erin of the nature of the charges against her and permitted her to plan a defense. The claims brought forth also gave the trial court jurisdiction over the case. As a result, the first assignment of error is overruled.

Erin's second and Roy's first assignments of error maintain that the trial court improperly considered the best interest of the children during the adjudicatory phase of the proceedings. Both parties specifically cite as error that portion of the court's September 11, 1990 entry which noted:

"Since the children have been in the custody of Children's Services, they have made significant progress. The situation of Jessica and Samantha could perhaps be described as normal improvement or maturing; however, the improvement in Laura's situation is much more dramatic. Regular attendance at the clinic and at the Twin Valley School, and the home program faithfully followed by the foster parents, have resulted in Laura's making much greater, and unexpected, progress than she had made previously."

Before a child may be removed from parental custody, a bifurcated judicial proceeding must be held. *In re Hodgkin* (Dec. 31, 1990), Preble App. No. CA90–03–007, unreported, 1990 WL 235496. The sole issue before the court at the first, or adjudicatory, hearing is whether the child is neglected or dependent. *In re Sims, supra,* 13 Ohio App.3d at 38, 13 OBR at 40, 468 N.E.2d at 113. The focus is on the parent's ability to provide food, shelter and care, and what they are capable of providing in the future. *In re Vickers Children* (1983), 14 Ohio App.3d 201, 204, 14 OBR 228, 231, 470 N.E.2d 438, 442. A consideration of the "best interest" of the child is not involved at this step and is only permitted after the proceeding has shifted to the second, or dispositional, stage. *In re Cunningham* (1979), 59 Ohio St.2d 100, 107, 13 O.O.3d 78, 82, 391 N.E.2d 1034, 1038.

It is contended that the above-referenced language illustrates that the court prematurely considered evidence which is admissible only at the dispositional stage. However, when this brief passage regarding the children's progress is read in conjunction with the remainder of the court's decision, it is evident that the trial court abided by the correct standard in adjudicating PCCS's neglect and abuse claims. See *In re Adkins* (Feb. 22, 1988), Butler App. No. CA87–03–038, unreported, 1988 WL 21304. As a result, Erin's second and Roy's first assignments of error are not well taken.

Erin's third assignment of error alleges that the trial court erroneously considered evidence of her resentment of PCCS and her failure to comply with the case plan during the adjudicatory phase. In its entry dated September 11,

1990, the court noted that both Roy and Erin "have not complied, in any meaningful manner, with the case plan" and have been "not only resistive, but abusive and aggressive towards the various caseworkers." It is contended such evidence is not probative of the issue of whether the children were neglected or abused.

As this court reiterated in *In re Vickers Children, supra,* 14 Ohio App.3d at 206, 14 OBR at 233, 470 N.E.2d at 444, the focus during the adjudicatory stage of a hearing "is on the parent, the parent's conduct and how that conduct has hurt the children." Evidence that the parents were uncooperative with caseworkers from the children's services agency reflects adversely on the parent's ability to care for their children since the parents are fully aware that failure to abide by the agency's guidelines could result in the divestiture of their rights. The same is true regarding evidence of the parents' compliance with the case plan. As such, it was evidence which could be considered by the court. Accordingly, no merit is found in Erin's third assignment of error.

■ Erin's fourth assignment of error alleges that the state impermissibly used witnesses to attack her credibility in violation of Evid.R. 608(B) on two separate occasions during the trial. In pertinent part, Evid.R. 608(B) states:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence."

It is maintained that the first Evid.R. 608(B) violation occurred when a fraud investigator from Dayton Power and Light Company testified about visiting the Pieper residence on December 6, 1989 concerning an overdue bill. According to the investigator, a female confronted him at the front door of the house who originally denied but later admitted to being Erin.

Despite Erin's contentions, the admission of the investigator's testimony is directly relevant to her ability to provide shelter and care for her children. Although the incident occurred approximately four months after the filing of the amended complaint, it provides some evidence of her ability to provide a basic necessity, namely electricity, for the children in the future. Accordingly, it was not error to admit such evidence.

■ The second violation cited by Erin allegedly took place during cross-examination when she stated she had filed a complaint for assault on July 16, 1990, against a PCCS caseworker following a dispute over an unscheduled visit at the PCCS office. On rebuttal, a Preble County Deputy Sheriff testified that Erin told him the caseworker used the palm of her hand to guide Erin out of a room. The caseworker supervisor against whom the complaint

was filed further testified that she never touched Erin during the incident. Two other PCCS caseworkers corroborated the supervisor's testimony. Erin maintains the trial court's admittance of the rebuttal testimony is improper since the state is "stuck" with unsatisfactory answers it receives to collateral issues on cross-examination. See *State v. Carroll* (May 31, 1985), Warren App. No. CA84–08–056, unreported, 1985 WL 8687.

As noted earlier, only where it appears that the trial judge actually considered inadmissible testimony in reaching its decision will an appellate court reverse on the basis of the admission of such testimony. *In re Sims, supra,* 13 Ohio App.3d at 41, 13 OBR at 43, 468 N.E.2d at 116. Upon reviewing the court's entry, no specific reference to this incident is mentioned. Instead, the court stated in conclusory fashion that Erin had been uncooperative with and resistant towards PCCS and its caseworkers. Given that Erin herself testified to having a stormy and uncooperative relationship with PCCS, it cannot be presumed that the trial court relied solely on the rebuttal testimony in finding as it did. Thus, the fourth assignment of error is overruled.

■ It is asserted in both Erin's and Roy's fifth assignments of error that the trial court's adjudication is against the manifest weight of the evidence. Erin additionally argues that the disposition is against the manifest weight of the evidence. In addition to finding all three children neglected, the court found Jessica and Samantha sexually abused and Samantha physically abused. As a reviewing court, our inquiry is limited to a determination of whether sufficient credible evidence exists to support the trial court's adjudication. *In re Hodgkin, supra,* at 4.

Before addressing the merits of this consolidated assignment of error, we note that each of the parent's interests will be considered separately with regard to both the sexual abuse and neglect findings. Although this approach may be novel, we find it proper in light of the juvenile court's authority to award legal custody of a neglected child to either parent requesting custody prior to the dispositional hearing. R.C. 2151.353(A)(3). By looking at the actions of each parent respectively, the goal of the adjudicatory hearing to examine each parent's ability to be an adequate parent will be better realized. Moreover, such an analysis comports with the main purpose of R.C. 2151.01 *et seq., i.e.,* upholding family unity, since only the truly blameworthy parent will be held accountable for their actions. Furthermore, by evaluating each parent's behavior apart from the other's, we respect the well-recognized and fundamental right of personal choice in family matters. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66. Finally, this approach is particularly appropriate in a case such as this where one of the

parents was hospitalized for a period of time immediately preceding the filing of the neglect complaint.

In attacking the court's finding that the girls were sexually abused, Roy argues that there is no medical evidence indicating physical proof of such abuse and enlists as support the testimony of Dr. Ellen Buerk. After conducting physical examinations of the girls, Dr. Buerk testified that Jessica exhibited suspicious, but not definitive, signs of sexual abuse, while Samantha failed to demonstrate any positive physical signs of abuse. Based on this testimony, Roy maintains that the court's decision finding the two girls sexually abused is against the manifest weight of the evidence.

The testimony of other witnesses, however, provides sufficient credible evidence that the girls had been abused. Dr. Marilyn Shea, a psychologist, opined that both girls had been sexually abused after they told her that Roy and their half-brother, Brian, put "their things inside of" them. Based on observations of the children during therapy, a licensed clinical counselor, Barbara Evans, opined that Jessica and Samantha exhibited severe signs of sexual abuse. Linda Daily, a PCCS caseworker supervisor, testified that the girls informed her that Roy had repeatedly touched their vaginas with his mouth, fingers and penis. The girls also told Daily that Brian and some of Roy's friends had engaged in similar behavior. Roy's sister, Sharon Phillips, testified that both Jessica and Samantha told her that Roy had "stuck his ding dong in me." This statement is corroborated by Dr. Buerk's testimony that both Jessica and Samantha told her that Roy "stuck" them in the vaginal area. Based on the above testimony, we find there is sufficient credible evidence to support the trial court's finding that Roy sexually abused Jessica and Samantha.

■ However, there is no such evidence indicating that Erin sexually abused the children. Indeed, the guardian ad litem's brief concedes that "most of the evidence in this case deals with the abuse of the children by the father." Moreover, there is scant evidence that Erin even had knowledge that the abuse occurred. Twice during the trial, Erin denied having any knowledge that Jessica and Samantha had been sexually abused. In short, absent sufficient credible evidence indicating Erin sexually abused the girls or had knowledge of such activity by Roy, we deem it inappropriate to admonish her for actions undertaken by her husband.

■ The next issue which will be addressed pertains to the court's finding of neglect. The fault, unfitness or unsuitability of the parent is a necessary element in determining that a child is neglected. *In re Sims, supra,* 13 Ohio App.3d at 45, 13 OBR at 48, 468 N.E.2d at 120, quoting *In re East* (1972), 32 Ohio Misc. 65, 66–67, 288 N.E.2d 343, 344–345. As a result, a finding of

culpable acts by the parent which caused the child's neglected condition must be made. *Id.* Such a showing is necessary since "[a] parent's primary rights to the care and custody of a child are rights that must be protected * * *." *In re Bibb* (1980), 70 Ohio App.2d 117, 122, 24 O.O.3d 159, 163, 435 N.E.2d 96, 100.

Upon a review of the record, we find sufficient credible evidence to warrant such a finding regarding Roy's behavior. To give but one example of his unfitness as a parent, after a fight with Roy in April 1989, Erin took the children with her to a battered women's shelter in Richmond, Indiana. The shelter subsequently sent them to a local hospital for an alleged child abuse evaluation. The doctor conducting the examination of Samantha testified that the bruises about the girl's buttocks, thighs and knees were consistent with her story that Roy had beaten her with a stick several days earlier.

The record, however, fails to attribute any culpable act to Erin which caused the children's neglected condition. To begin, several of the neglect conditions alleged in the complaint, including the charges relating to the cleanliness of the house, occurred when Roy remained at home while Erin was hospitalized from April 12 to April 20, 1989. Furthermore, despite Roy's apparent apathy about the well-being of his children, evidence elicited at trial indicated Erin demonstrated a sincere interest in the children, particularly Laura. According to the testimony of Jonathan Smith, supervisor of Laura's school, Erin exhibited concern about Laura and made trips to visit her at the school. Erin further testified that she regularly cleaned and bathed Laura before school. The record also reflects that Erin displayed a desire to become a better parent by attending a child development course at a local university as well as a young adulthood course at a community college, although it is unclear as to when she attended the courses.

On the other hand, the court's only reference to Erin's allegedly unsuitable behavior states that her failure to take her medicine for her bipolar disorder resulted in her being hospitalized twice over a one-and-one-half-year period. Pursuant to our ruling in *In re Sims, supra,* such evidence is clearly insufficient to establish a finding of neglect on Erin's behalf.

The state counters that Erin's failure to inform the court about her future with Roy reflects adversely on her ability to protect the children and warrants the termination of her parental rights. Such an argument ignores the reality that the burden of proof during the adjudicatory stage is "upon the state to justify a governmental intrusion into the family unit involving the possible severance of the right of a parent to the custody of * * * her children." *In re Sims, supra,* 13 Ohio App.3d at 39, 13 OBR at 41, 468 N.E.2d at 114. Simply put, the state has failed to prove that Erin's conduct, separate and apart from

Roy's, caused her children to be neglected. As Erin, with mixed metaphor, states in her brief, "whatever may be Mr. Pieper's faults, it is unfair and unjust to tar and feather [me] with the same brush."

In view of the above, Roy's fifth assignment of error regarding the manifest weight of the trial court's adjudication is overruled, while Erin's fifth assignment of error pertaining to the same issue is deemed well taken. Having sustained that portion of Erin's assignment dealing with the adjudication, we have no need to discuss her argument regarding the disposition.

■ Roy's second assignment of error contends that the trial court's admission of the children's hearsay statements regarding sexual abuse violated his constitutional right of confrontation. According to the Confrontation Clause, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In support of his argument, Roy cites the United States Supreme Court's decision in *Idaho v. Wright* (1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638, wherein the court held that the trial court improperly admitted a doctor's testimony concerning certain statements made by an alleged child abuse victim which amounted to a violation of the defendant's Confrontation Clause rights. The court noted that hearsay statements may be admitted only upon a showing of particularized guarantees of trustworthiness or a firmly rooted hearsay exception. *Id.* at ——, 110 S.Ct. at 3148, 111 L.Ed.2d at 653. For purposes of the Confrontation Clause, the "particularized guarantees of trustworthiness" must "be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at ——, 110 S.Ct. at 3149, 111 L.Ed.2d at 655.

Although the court declined to adopt a mechanical test, it did provide several factors which it believed properly related to the reliability of a child declarant's hearsay statements in child sexual abuse cases. Among those listed by the court included spontaneity and consistent repetition, mental state of the declarant, and use of terminology unexpected of a child of similar age. *Id.* at ——, 110 S.Ct. at 3150, 111 L.Ed.2d at 656. While this list is not exclusive, the underlying principle behind any factor is whether the declarant "was particularly likely to be telling the truth when the statement was made." *Id.* Corroborating evidence, the court concluded, is not a basis for finding the declarant trustworthy but rather applies to rendering the admission of hearsay statements harmless. *Id.* at ——, 110 S.Ct. at 3150–3151, 111 L.Ed.2d at 656–658.

Ignoring for the moment that the Sixth Amendment right to confrontation is not applicable in a case involving the termination of parental rights in a noncriminal proceeding, *In re Burchfield* (1988), 51 Ohio App.3d 148, 555

N.E.2d 325, we nevertheless find the hearsay statements admitted by the court in the instant case contained "particularized guarantees of trustworthiness." Unlike *Wright,* where the defendant challenged the testimony of a single pediatrician, Roy contends that the hearsay statements in this case are "too numerous to mention." For purposes of brevity, we will concern ourselves with the testimony of two witnesses which was instrumental in finding that the girls had been sexually abused.

Barbara Evans, a licensed clinical counselor with specialized training in sexually abused children, testified that during several therapy sessions Jessica placed anatomically correct dolls in several sexual positions. While playing with the dolls, Jessica referred to the male doll as daddy and friends, and the little girl doll as herself. Evans also recalled that during one session, Jessica put the father doll over the little girl doll and told her that "daddy does this to Sammie, too." Finally, Evans stated that Jessica referred to the dolls' penis and vagina as ding dong and pussy, respectively.

The Piepers' caseworker, Mary Myers, also testified to attending one of Evans' sessions with Jessica. In particular, she recalled Jessica sticking the penis of the daddy doll in Evans' mouth, and moments later, repeating the same procedure on her. Myers also remembered that Jessica threw the doll on the floor and in the trash can and told her that "he did that to my sister, too."

Jessica's explicit knowledge of sexual terms and the sensuality of her behavior at such an early age adequately supports the underlying trustworthiness of her statements. It is difficult to imagine that a child of her age would adequately comprehend and appreciate the implication of her behavior during the therapy sessions. Jessica's behavior also indicates she was particularly likely to be telling the truth when she made the statement about Samantha and her father. Upon a review of the record, we find the majority of the hearsay statements admitted by the court contained *Wright*-type factors which rendered the girls particularly worthy of belief. Accordingly, we find no violation of Roy's Confrontation Clause rights and overrule his second assignment of error.

 Roy's third assignment of error essentially raises two issues for review regarding the testimony of the court-appointed psychologist, Dr. Eugene S. Cherry. Roy initially argues that Dr. Cherry impermissibly commented on the truthfulness of Jessica's sexual abuse claim during a dialogue with the court. He also alleges that Dr. Cherry improperly testified about Jessica's ability to accurately relate personal experiences.

To support his argument, Roy cites *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, wherein the Ohio Supreme Court held that an expert

may not state his opinion on the veracity of an allegedly sexually abused child's statements. Such an opinion, the court noted, " 'infringed upon the role of the fact finder, * * * who bears the burden of assessing the credibility and veracity of witnesses.' " *Id.* at 128–129, 545 N.E.2d at 1240, quoting *State v. Eastham* (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409, 414 (H. Brown, J., concurring). However, as noted previously, the trial judge is presumed capable of disregarding improper testimony when acting as the fact-finder. *In re Sims, supra,* 13 Ohio App.3d at 41, 13 OBR at 43, 468 N.E.2d at 116.

Although it was error to permit Dr. Cherry to testify as to such matters, there has been no showing that the trial court actually relied on his testimony. Indeed, the court's entry makes no mention of Dr. Cherry's testimony. Rather, the court noted that it was Jessica's statements as well as the symptoms displayed by the children that caused it to conclude Roy had sexually abused the children. Therefore, we deem the admittance of Dr. Cherry's testimony harmless error and overrule Roy's third assignment of error.

In his fourth assignment of error, Roy maintains that counsel's failure to object to both Dr. Cherry's testimony and the alleged hearsay statements of the children (previously cited herein as Roy's second and third assignments of error) constituted ineffective assistance of counsel.

Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. ——, 110 S.Ct. 3258, 111 L.Ed.2d 768. In order to show prejudice, the complaining party must prove with reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.,* 42 Ohio St.3d at 143, 538 N.E.2d at 380.

Having overruled the assignments of errors which formed the basis of Roy's claim, we find no showing of prejudice has been made. Therefore, there is no merit to Roy's fourth assignment of error.

Based on our rulings herein, we reverse the trial court's decision to divest Erin Pieper of all parental rights, and affirm the court's decision to divest Roy Pieper of all parental rights.

*Judgment affirmed in part*
*and reversed in part.*

JONES, P.J., and KOEHLER, J., concur.