OPINION
In August 1995, the Butler County Board of Children's Services ("BCCSB") filed a complaint alleging that both daughters of defendant-appellant, Dana Overbay, were abused and dependent children. An interim protective order was issued on October 11, 1995, prohibiting contact between appellant and the two girls: Laura, born May 19, 1984; and Jessica, born February 21, 1987. After a hearing held on February 7, 1996, a magistrate of the Juvenile Division of the Butler County Court of Common Pleas found the children to be abused and dependent, placed temporary custody of the girls with their mother, and continued a "no contact" order between appellant and the girls. Appellant objected to the magistrate's report. His objections were overruled, and the trial court adopted the magistrate's report. This appeal followed.
In his first assignment of error, appellant states that the trial court committed reversible error when it refused to allow the testimony of Indiana Detective Elizabeth Willie. According to appellant, Willie was prepared to testify to statements made by Laura and Jessica that were inconsistent with the girls' testimony at trial. The complained of exchange is set forth below:
 Ms. Yauch [counsel for BCCSB]: I'll let the court know right now . . . the parties know right now. I have no problem as to her qualifications, as to the fact that she investigated and chose not to file charges but as to anything that she's going to say . . . what tests have been done or what has been told to her I'm objecting to all hearsay and for that reason I don't know what else you can use this witness for. I'll stipulate to the fact that she didn't file charges.
 Mr. Newland [counsel for appellant]: What . . . what I was primarily aimed at using this witness for was generally her impressions and reasoning for her actions, any inconsistencies that she may have, you know, what . . . what drew her to . . .
 Ms. Yauch: The witness is not allowed to testify as to the (inaudible) of anybody's testimony whether she believes it's true or not true. She's allowed to testify only as to her investigation and that she believes that . . . or that she did not file charges after making a complete investigation. I'll stipulate to that.
 Mr. Newland: Would that even go as far as possible well inconsistencies between testimony given today and answers to questions she has asked of the individual previously that also fall under the hearsay?
Ms. Yauch: I'm going to object to it.
 Ms. Thompson [guardian ad litem]: I would also.
 Mr. Pitstick [counsel for Betty Needham]: I'll object as well for the record.
 Mr. Newland: One moment. In light of that I imagine there's no further quetions at this time.
 By the court: Anyone else have any questions of this witness?
Ms. Thompson: I don't have.
By the court: Thank you.
 Mr. Newland: I would call Elizabeth Eddie. She's out here.
It is obvious from the above passage that the trial court did not err by refusing to allow Willie's testimony because the court did not rule on the objections, and appellant's counsel declined to question the witness further. A decision by the trial court to sustain the objections may well have been reversible error. However, the trial court did not make a ruling and counsel did not pursue the line of questioning, nor did counsel attempt to make an offer of proof to preserve the alleged error for appeal. See Evid.R. 103(A)(2). Therefore, we have nothing to review. Appellant's assignment of error is overruled.
In his second assignment of error, appellant argues that there is insufficient evidence in the record to support the decision of the trial court that the girls were abused and dependent.
In the complaint, the state alleged that the girls were abused as defined under Sections (A) and (D) of R.C 2151.031 (abused child defined). Section (D) defines an abused child as one who:
 Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.
At trial, both girls complained of the living conditions at their father's house. Laura stated that she was unhappy with the food she had to eat (cereal for breakfast, a school lunch, ravioli for dinner), the clothes she had to wear ("[h]e made me wear dirty clothes to school"), and the chores she had to do (keeping her room clean, doing the dishes, laundry, vacuuming, dusting, and, occasionally, mowing the lawn using a riding mower). Laura also testified that her Aunt Connie came to the house a few times a week to clean, including cleaning up her (Laura's) room. Laura testified that if she didn't clean as requested by appellant, appellant would "whoop" her and that he "whooped" her often but not so hard that he left bruises. Laura testified that appellant also whipped Jessica, but not very much. Laura stated that appellant did not take her anywhere except for hunting every other week, to the movies, and skating. She also testified that appellant made her rub his shoulders when he was lying in bed and that appellant sometimes tickled her, but not to the point where it would bother her.
Jessica testified that she had to clean her room and appellant's room, wash dishes, vacuum, do the laundry or she would be sent to her room. As for her diet, Jessica testified that she ate sausage biscuits with cheese, ravioli, Spaghettios, bananas, oranges and apples. She was allowed to snack between meals and at night. She also testified that appellant made the girls wear long t-shirts and stretch pants and that he told her she was fat. Jessica complained that appellant would sit on her and tickle her and that when she asked him to let her get up, "sometimes" he would let her up.
Laura and Jessica both testified that appellant called them "bitch" and "whore." However, there is some evidence that if appellant did, in fact, direct these words towards his children that it was in reference to events that occurred during these proceedings.
The state must prove dependency and abuse by clear and convincing evidence. Juv.R. 29(E)(4); In re: Sweat (June 22, 1987), Warren App. No. CA86-06-040, unreported, slip op. at 3. Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief as to the facts sought to be established. In re: Weaver (1992), 79 Ohio App.3d 59, 64. As a reviewing court, our inquiry is limited to whether sufficient credible evidence exists to support the trial court's determination. In re Pieper Children (1991), 74 Ohio App.3d 714,722.
After thoroughly reviewing the record, we do not find that the evidence presented at trial is sufficient to support a determination that the girls meet the definition of abused children. While the girls' testimony indicates that they were somewhat unhappy with their living conditions at their father's house, we find no evidence of physical or mental injury that is or would be harmful to their health or welfare.
Nor do we find sufficient evidence in the record to support a determination that the girls are abused children under Section (A) of R.C. 2151.031. Section (A) defines "abused child" as one who:
 Is the victim of "sexual activity" as defined under Chapter 2907. of the Revised Code * * *[.]
"Sexual activity" is defined in R.C. 2907.01(C) to include "sexual contact" which, in turn is defined as:
 [A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is female, a breast, for the purpose of sexually arousing or gratifying either person.
The girls' testimony concerning allegations that they were victims of appellant's "sexual activity" includes the following: Laura testified that "sometimes when [she] wasn't noticing," appellant would use the bathroom at the same time that she was bathing. She also testified that one time, seven years prior to the hearing when she was four-years-old, appellant threw her on the couch, unzipped her pants, and touched her "private area" outside her panties. She stated that when she was younger, her father made her call him her boyfriend.
Jessica, who was eight when she testified, stated that sometimes she would wash her Dad's back when he bathed. She also testified that he would also wash her back and that sometimes he would dry her private areas after a bath. She stated that sometimes he would tickle her more than she wanted him to and occasionally, but not often, appellant patted her "butt." Laura testified that during hunting trips, appellant would take Jessica back "in the weeds" and Laura would see "the bushes shaking a lot." Jessica, however, did not testify about being in the bushes with appellant.
Appellant denied having any sexual contact with either of his daughters. Appellant specifically denied that the alleged incident with four-year-old Laura ever occurred. There was no evidence presented that appellant's alleged actions were for the "purpose of sexually arousing or gratifying either person." See R.C. 2907.01(C). There was no medical evidence presented at trial, no pyschological evidence, nor any evidence corroborating the girls' testimony.
Laura's statement that appellant touched her is troubling. However, it is simply not sufficient competent credible evidence, even when considered with the other allegations by Laura and Jessica, to sustain the trial court's determination that the girls were sexually abused.
Appellant also argues under this assignment of error that the trial court erred when it determined that the girls are dependent as that term is defined in R.C. 2151.04(C) and (D). R.C. 2151.04
defines a "dependent child" as follows:
* * * "dependent child" includes any child:
* * *
 (C) Whose condition or environment is such as to warrant the state, in the interest of the child, in assuming his guardianship;
(D) To whom both of the following apply:
 (1) [The child] is residing in a household in which a parent, guardian, custodian or other member of the household has abused or neglected a sibling of the child;
 (2) Because of the circumstances surrounding the abuse or neglect of the sibling and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or other member of the household.
At trial, Betty Needham, the girls' mother and temporary custodian, testified that she had four children living with her: the girls; their brother, Charles; and their stepbrother, David. Needham stated that Butler County Juvenile Court was overseeing a case involving the sexual abuse of Charles by David. Based on this testimony, it is possible to conclude that the girls were living in a household where a member of that household (David) had abused one of their siblings (Charles) and that they are in danger of being abused by that member of the household. Accordingly, the trial court did not err in finding the girls to be dependent.
At a dispositional hearing, the trial court must determine the best interest of the child. In the Matter of Tonya Pant (Feb. 29, 1988), Clermont App. No. CA87-05-039, unreported. In this case, the girls were adjudicated dependent and ordered to continue living in the environment that gave rise to their dependent status. We do not understand how this arrangement serves the children's best interest, and there are no findings of fact or other explanation in the record to explain the reason for this temporary custody order. We find, therefore, that this disposition of the case by the trial court constitutes plain error. See State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
The plain error doctrine is applied almost exclusively in criminal cases, but may be applied in civil cases, if the error "would have a material adverse affect on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209. The instant case presents one of those rare situations in which the plain error doctrine must be invoked. The record indicates that there are problems attendant to placing the girls with either parent or with BCCSB. However, the disposition reached by the trial court based upon the record before us does not appear to be in the childrens' best interest and serves to undermine confidence in the judicial process.
Therefore, the judgment of the trial court is affirmed as to dependency, reversed as to abuse, and remanded for further dispositional proceedings consistent with this opinion and in the best interest of the children. On remand, the trial court is instructed to hold a new dispositional hearing to consider the specific advantages and disadvantages of placing the children with BCCSB, appellant, or the children's mother.
YOUNG, P.J., and KOEHLER, J., concur.