OPINION
Appellant Evelyn Eddy appeals the decision of the Fairfield County Court of Common Pleas, Juvenile Division, granting the Fairfield County Children's Services Agency ("FCCS") permanent custody of her infant child Baby Boy Eddy, n.k.a. Adam Eddy. As an initial matter, we note that this Court reviewed the case involving three of Adam's five siblings in In the Matter of Joshua Eddy, Richard Eddy and George Eddy (Oct. 2, 1998), Fairfield App. Nos. 97CA74, 97CA73, 97CA75, unreported ("Eddy 1"). Our decision upheld the trial court's grant of permanent custody of the brothers. Adam was not involved in that case, as the trial court's judgment entry giving rise to said appeal predated his birth. On May 13, 1998, appellant gave birth to Adam Eddy. FCCS learned about the birth from an anonymous telephone call, despite appellant's involvement with the agency in regard to her other children. FCCS first obtained an emergency custody order from the trial court, then obtained a temporary custody order on May 20, 1998, pending adjudication. On June 18, 1998, appellant and Adam's father, Richard Eddy, stipulated to a dependency finding by the trial court. In a motion filed July 23, 1998, FCCS requested permanent custody of Adam, which the trial court set for hearing on November 23, 1998. In the meantime, events transpired in related criminal proceedings involving appellant and Richard Eddy. On June 9, 1998 appellant pled "no contest" to Complicity to Child Endangering, a fourth degree felony. Additionally, Richard Eddy pled guilty to the offense of Child Endangering, a third degree felony, on August 11, 1998. At the evidentiary hearing regarding permanent custody on November 23, 1998, FCCS called three witnesses from the agency and elicited testimony from appellant herself. Richard Eddy did not take the stand. At the close of evidence, the trial court took the matter under advisement, giving the attorneys the opportunity to submit written closing arguments and proposed findings of fact. On February 11, 1999, the trial court issued its judgment entry granting permanent custody of Adam to FCCS. Appellant timely appealed, and herein raises the following four assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION OF FAIRFIELD COUNTY CHILDREN'S' (SIC) SERVICES FOR PERMANENT CUSTODY OF THE MINOR CHILD ADAM EDDY AS THE STATE OF OHIO FAILED TO ESTABLISH THE JURISDICTIONAL PREREQUISITES FOR A GRANT OF PERMANENT CUSTODY AS SET FORTH IN R.C. § 2151.414.
 II. THE TRIAL COURT ERRED WHEN IT MADE AND JOURNALIZED FINDINGS OF FACT 24, 25, 26, 30, 34, 36[,] 37, 40, 42[,] 44c, d, e, 48, 56, 57, 58, 59, 60, 62, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 76, 85, 87[,] 88, 90, 91, 92, 93, 94 AND 95 THAT WERE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 III. THE TRIAL COURT ERRED WHEN IT ENTERED AND JOURNALIZED CONCLUSIONS OF LAW NUMBERS 2, 5, 8, 20, 21, 22, 23, 24 AND 25 WHICH CONCLUSIONS ARE ILLUSORY IN THAT THEY HAVE NO BASIS IN FACTS AS ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE OF RECORD. CONSEQUENTLY, THE TRIAL COURT ERRED IN GRANTING THE STATE OF OHIO'S MOTION FOR PERMANENT CUSTODY BASED UPON THESE FALLACIOUS CONCLUSIONS OF LAW.
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT GRANTED THE MOTION OF FAIRFIELD COUNTY CHILDREN'S' (SIC) IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE OF THE FACTS REQUIRED BY R.C. § 2151.414 BY CLEAR AND CONVINCING EVIDENCE.
 I, II, III, IV
We initially note that appellant's brief sets forth her arguments in one unbroken section. Pursuant to App. R. 16(A)(7), an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions * * *." (Emphasis added.) See, also, App.R. 12(A)(2). Nonetheless, appellant essentially argues that the bulk of the findings of fact and conclusions of law, as well as the ultimate decision by the trial court to grant permanent custody pursuant to R.C. 2151.414, in the face of what she alleges was a failure by FCCS to establish jurisdictional prerequisites, were not supported by clear and convincing evidence. For the following reasons, we find the trial court's termination of appellant's parental rights was not against the manifest weight of the evidence. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, 281. It is based upon this standard that we review appellants' four assignments of error. The relevant statute, as written at the time of the permanent custody action in the case sub judice, is R.C. 2151.414. It provided in part: * * * (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
* * *
In determining the best interest of the child, R.C. 2151.414(D) provided:
 In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 * * * or division (C) of section 2151.415 * * * of the Revised Code, the court shall consider all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Thus our first task is to analyze whether there exists competent, credible evidence to support a finding that permanent custody was in the best interest of Adam and to support a finding that R.C.2151.414(B)(1), (2), or (3) applied. Based upon our review of the record, we find the trial court's determination that it was in the best interest of Adam to grant permanent custody to FCCS is not against the manifest weight of the evidence. Secondly, the record in this matter supports the trial court's conclusion that Adam cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. Although the law does not favor a trial court taking judicial notice of prior proceedings in a separate case not admitted as part of the record (see, In re: Knotts (1996), 109 Ohio App.3d 267), in this case, the evidence concerning appellant's attempts and desire to correct the ongoing problems following FCCS intervention during Eddy 1 is not only relevant, but indispensable. "A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." In re Campbell (1983),13 Ohio App.3d 34, 36; see, also, In re Shuman (May 19, 1999), Lorain App. No. 98CA7082, unreported, at 6. We find the Campbell rationale even more compelling in a situation such as in the case sub judice, where just under seven months elapsed between the trial court's granting of permanent custody in Eddy 1 and the birth of Adam. The record demonstrates appellant's frequent reluctance to alter her parenting behaviors. For example, FCCS Ongoing Unit caseworker Cathy Lombardo who met with appellant no less than four times between May 20, 1998 and June 4, 1998, testified on direct examination:
 Q. Okay. Do you recall how long that meeting [of May 27, 1998] lasted?
A. Probably about an hour.
 Q. During the course of that meeting (cough), excuse me, did you explain to Mrs. Eddy anything that [she] would have to do or should do in connection with the case plan if she wanted to get the baby back?
A. Yes.
Q. All right, explain, explain to us what those were.
 A. One thing would be for, uh, to accept responsibility for the other, what has happened with the other children.
Q. And did Mrs. Eddy have a response to that?
 A. Uh, it's always been her contention that she's done nothing wrong and she doesn't need to change. And it was the same that day.
 Q. Okay. She indicated no change in her behavior, is that correct?
A. Correct.
Q. Okay, what else did you explain to her?
 A. Well, we went over as many elements as we could get through on the risk assessment. I don't have that in front of me, um, but we began to cover that, each one individually.
 Q. Okay. Uh, let me shortcut this a little bit. Uh, would it be fair to say, Ms. Lombardo, that the risk assessment and the case plan process that you were undergoing that day called for her to make certain changes in her behavior?
A. Yes.
 Q. Okay. And did she indicate at that meeting to change her behavior?
A. No.
 Q. Did she indicate any understanding that she thought she needed to change her behavior?
A. No.
 Q. Did you leave that meeting with a feeling that she was going to work towards case plan goals and try to improve her parenting skills?
A. No, I didn't.
T. at 34-35.
* * *
Lombardo further averred the following:
 Q. In your view would, uh, (cough), excuse me, Adam's best interests be served by returning him to his natural parent?
A. No.
Q. And why is that?
(Pause)
 A. We have quite a history with this family and (pause) in the past and currently they have not shown a willingness to change, to work on any of the case plan goals that I have set forth or that other caseworkers in the past have set forth.
 Q. In your view, would the best interests, would his, would Adam's best interests be served by placing him in a legal custody situation, in an in between situation?
 A. No, I believe that any child needs permanency. I, I don't believe that that would be serving that interest, to place him in a legal custody situation.
* * *
T. at 58.
Appellant's lack of progress in completing a psychological evaluation became an ongoing problem. FCCS called social worker and interim assistant director Jim Hodge, who described appellant's previous failure to pursue a recommended psychological evaluation:
Q. When you say the psychological what do you mean?
 A. She had begun a pyschological (sic) evaluation with Doug Polarczk, the psychologist from New Horizons.
 Q. Is New Horizons one of the agencies mentioned in the plan?
A. Yes.
Q. Okay. Continue.
 A. And had, uh, Evelyn (pause) I guess, per Evelyn, I guess the only way to describe it is the way she described it. She said there was just to (sic) Pollocks (sic) in the same room. He asked her a question she didn't like so she refused to complete the test and didn't complete the test * * *.
T. at 104.
Although we have held that satsfactory completion of a case plan does not necessarily mean a parent has fully benefitted from participation in the plan (In the Matter of Troescher (July 29, 1996), Stark App. No. 95CA0326, unreported), it is certainly a reliable guage in determining whether reunification can be reached. Failure to comply with case plan provisions may be interpreted as indicative of parental inability to care for a child. In re Pieper Children (1991), 74 Ohio App.3d 714, 721. We have also upheld permanent custody findings despite evidence in the record that a parent made partial progress on the case plan. In re Bunting Children (Oct. 13, 1998), Stark App. No. 97CA0381, unreported. Here, however, FCCS presented competent, credible evidence that appellant's level of participation in correcting her parenting problems, and any prospect for future participation, were minimal or nonexistent. Additionally, although the parties did not agree that adoption would be in Adam's best interest, counsel did enter a stipulation that the child was adoptable. T. at 10. The relevant statutory scheme, under R.C. 2151.414(E)(1) through (E)(16), clarifies the aforementioned second prong requiring a finding that a child cannot or should not be placed with either parent. The trial court in its judgment entry precisely stated its conclusions that subsections (E)(1) and (E)(6) applied to appellant's case: 23. there is clear and convincing evidence that:
 a. following the placement of Baby Boy Eddy outside the home and notwithstanding reasonable case planning and diligent efforts by FCCS to assist Richard and Evelyn Eddy to remedy the problem that initially caused Baby Boy Eddy to be placed outside the home, both Richard and Evelyn Eddy have failed continuously and repeatedly to substantially remedy the conditions causing Baby Boy Eddy to be placed outside the home by amongst other things, failing and refusing to cooperate with FCCS in following the case plan for this child and failing and refusing to utilize the psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to them by FCCS for the purpose of changing their parental conduct to allow them to resume and maintain parental duties. [RC 2151.414(E)(1)]:
* * *
 d. Evelyn Eddy violated and was convicted of violating sections 2923.03 and 2919.22 of the Revised Code, Complicity to Child Endangering as a Felony of the Fourth Degree, and that one or more siblings of Baby Boy Eddy were victims of this violation and that Evelyn Eddy, who committed said violation, poses an ongoing danger to Baby Boy Eddy and his siblings. (RC 2151.414(E)(6)).
Judgment Entry at 31-32.
Appellant particularly challenges these conclusions, alleging that FCCS put the matter "on the `rocket docket' to oblivion" (Appellant's Brief at 6), obtaining custody of Adam as punishment for a perceived lack of cooperation by appellant during Eddy 1 and failing to conduct any case management. Id. However, as recorded in the transcript there was ample testimony by witnesses Lombardo and Hodge supporting the holding that despite the FCCS Agency's reasonable case planning and diligent efforts, appellant had refused or failed to remedy the concerns that initially caused the child to be placed outside her home. Although appellant tries to place blame the non-compliance on FCCS, it is axiomatic that the trier of fact is in the best position to weigh evidence and evaluate testimony. See, In re Brown (1994), 98 Ohio App.3d 337,342; In re Hiatt (1993), 86 Ohio App.3d 716, 726. The statute calls for reasonable, not flawless, case planning, and further mandates that "[t]he court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan." R.C. 2151.414(C). Finally, we are cognizant of the necessity of reviewing such matters in light of the legislative mandate regarding Ohio's juvenile court system as found in R.C. 2151.01(A): The sections in Chapter 2151. of the Revised Code, with the exception of those sections providing for the criminal prosecution of adults, shall be liberally interpreted and construed so as to effectuate the following purposes:
 (A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code;
In its efforts to apply the relevant child protection statutes to the situation sub judice, the trial court's findings and conclusions pursuant to R.C. 2151.414(B), (D), and (E) were not against the manifest weight of the evidence. Appellant's First, Second, Third, and Fourth Assignments of Error are overruled.
For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Juvenile Division, of Fairfield County, Ohio, is affirmed.
By: Wise, P.J. Hoffman, J., and Farmer, J., concur.