[Cite as *In re R.B.*, 2018-Ohio-4086.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                      |   |                              |
|----------------------|---|------------------------------|
|                      | : | JUDGES:                      |
|                      | : |                              |
|                      | : | Hon. W. Scott Gwin, P.J.     |
|                      | : | Hon. William B. Hoffman, J.  |
|                      | : | Hon. Patricia A. Delaney, J. |
| IN RE R.B.           | : |                              |
|                      | : | Case No. 17CA22              |
|                      | : |                              |
|                      | : |                              |
|                      | : |                              |
|                      | : |                              |
|                      | : | O P I N I O N                |


CHARACTER OF PROCEEDING:          Appeal from the Knox County Court of
                                  Common Pleas, Juvenile Division, Case
                                  No. 217 2075


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           October 5, 2018


APPEARANCES:

For Parents-Appellants:                   For KCDJFS-Appellee:

DAVID M. HUNTER                           ASHLEY L. JOHNS
244 West Main Street                      200 Civic Dr., Suite 800
Loudonville, OH 44842                     Columbus, OH 43206

*Delaney, J.*

{¶1} The Parents-Appellants appeal the August 29, 2017 judgment entry of the Knox County Court of Common Pleas, Juvenile Division awarding temporary custody of R.B. to Appellee, Knox County Department of Job and Family Services.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On June 1, 2017, Appellee Knox County Department of Job and Family Services ("KCDJFS") filed a complaint alleging R.B. was a dependent child pursuant to R.C. 2151.04(C) and (D). One June 20, 2017, KCDJFS filed a complaint alleging B.B. was an abused child pursuant to R.C. 2151.031(C) and/or dependent child pursuant to R.C. 2151.04(C).

{¶3} An adjudicatory hearing was held before the trial court on July 20, 2017, August 3, 2017, and August 4, 2017. The following evidence was adduced at trial.

{¶4} R.B. (born on November 4, 2014) and B.B. (born on December 14, 2016) are the natural children on Mother-Appellant and Father-Appellant. B.B. was born prematurely but he did not have any known abnormal health issues as a result of his early birth.

{¶5} Mother and Father are married and both work outside of the home. When R.B. was approximately three-months old, Mother and Father asked their friend, L.E. (hereinafter "Babysitter"), to babysit R.B. in her home during the work week. Father and Babysitter were high-school friends and Mother became good friends with Babysitter. Babysitter's child was approximately the same age as R.B. No incidents were noted with R.B. while the child was in Babysitter's care.

{¶6}   On April 17, 2017, Babysitter started watching B.B. in her home, in addition to R.B. and Babysitter's two children. Mother would have lunch at Babysitter's home to breastfeed B.B.

{¶7}   On May 16, 2017, Babysitter told Mother that B.B. was sitting in a "jumperoo" with blanket tucked in front of B.B. to stabilize him. Babysitter said she was not in the room to see what happened, but she heard B.B. crying and found him in the jumperoo with the blanket on the floor. She said the older children had pulled the blanket out from under B.B., causing a rug burn on his right arm and neck.

{¶8}   On May 18, 2017, Mother took B.B. to the pediatrician because B.B. was not eating well and was regularly vomiting. The pediatrician diagnosed B.B. with a virus. The pediatrician also ordered an x-ray of B.B.'s abdomen area and the results were normal. On May 23, 2017, B.B. was still vomiting. Mother contacted the pediatrician, who diagnosed B.B. with acid reflux. The pediatrician prescribed Zantac for B.B.

{¶9}   Mother dropped off B.B. and R.B. at Babysitter's at 8:00 a.m. on May 24, 2017. Mother reported that B.B. seemed happy and content that morning. At approximately 11:00 a.m., Babysitter called Mother at work to report that something was wrong with B.B. Babysitter said she left B.B. sitting in a boppy in the living room while she went to the kitchen to get his bottle. When she returned to the living room, she observed B.B. gasping for air and his tongue was hanging out. Mother left work and arrived at Babysitter's home to find B.B. laying on the floor of the living room, gasping for air. Mother told Babysitter to call 911. Father arrived at Babysitter's home shortly thereafter.

{¶10} Emergency personnel arrived and found Mother and Babysitter at the home with B.B. on the floor. B.B. was transported to Knox Community Hospital and during

transport, B.B.'s condition deteriorated. His heart stopped or dropped below 60 beats per minute several times, requiring the use of CPR. At Knox Community Hospital, B.B. was stabilized and taken by life-flight to Nationwide Children's Hospital.

{¶11} At Nationwide Children's Hospital, B.B. was placed on life support in the NICU. A social worker with Nationwide spoke with Mother and Father about B.B. The social worker asked for Babysitter's name, but Mother was reluctant to give her the information. Mother eventually gave the social worker Babysitter's information.

{¶12} Dr. Heather Williams is a child abuse pediatrics fellow employed by Nationwide Children's Hospital. Dr. Williams became involved with B.B.'s case because the hospital's child assessment team was concerned that B.B.'s condition was caused by maltreatment. Based on Dr. William's clinical assessment, which included a review of B.B.'s health records, lab results, imaging results, and interviews with Mother and Father, she determined B.B. suffered from abusive head trauma caused by an acceleration and deceleration type force. A MRI of B.B.'s brain showed B.B. suffered from chronic subdural hematomas, showing both recent and old injuries. A MRI also showed that he suffered injuries to the ligaments at the top of the neck and muscles around the neck. A limited eye exam due to his severe injuries showed that B.B. had preretinal and intraretinal hemorrhages. Dr. Williams's clinical assessment ruled out all medical causes for B.B.'s injuries. Dr. Williams's investigation did not reveal any accidental cause for B.B.'s injuries, nor were the accidents described by Babysitter and Mother consistent with B.B.'s injuries. Dr. Williams indicated the time period of the traumatic injury to B.B. could have occurred within minutes or hours before the presentation of symptoms requiring medical intervention. Without medical intervention, it was the opinion of Dr. Williams that B.B.

would have died on May 24, 2017. B.B. survived his injuries, but would require occupational therapy and medical care for seizures, an NG tube, and a cervical collar. Dr. Williams had no opinion as to who caused the injuries to B.B.

{¶13} The social worker with Nationwide contacted Appellee Knox County Department of Job and Family Services ("KCDJFS") based on the concern that B.B.'s injuries were caused by maltreatment. April Hanners was the on-call worker in the KCDJFS intake unit investigations on May 24, 2017. Hanners spoke with Mother and advised that based on the report of abuse and the unknown perpetrator of the abuse, Mother and Father were required to develop a safety plan for R.B. Mother spoke with Hanners twice. Mother told Hanners the first time she did not know how the injuries occurred, but the second time Hanners spoke with Mother, Mother told Hanners about the jumperoo incident. Mother also told Hanners about another incident Babysitter relayed to her for the first time on May 24, 2017. Babysitter told Mother that she picked up B.B. by the hands and pulled him off the carpet while she was changing his diaper. Babysitter told Mother that B.B. had fallen about ten inches, hitting his head on the floor.

{¶14} Keisha Matheney, with the intake unit of KCDJFS, was assigned B.B.'s case on May 25, 2017. KCDJFS filed an emergency ex parte emergency order and R.B. was placed in the temporary custody of KCDJFS. KCDJFS conducted safety audits and placed R.B. and B.B. with a paternal aunt. During her investigation on May 25, 1017, Matheney interviewed Babysitter, Mother, and Father. Babysitter and Mother stated B.B. was injured during the jumperoo incident and he fell backwards approximately eight to twelve inches after diapering. Matheney attempted to interview Mother again but Mother declined. As a result of Matheney's investigation, KCDJFS determined physical abuse of

B.B. with regard to Babysitter, Mother, and Father was unsubstantiated. It substantiated physical abuse as to an unknown perpetrator.

{¶15} At the time of the adjudicatory hearing, paternal aunt had physical custody of both R.B. and B.B. KCDJFS was comfortable with the current placement. Mother and Father had weekly supervised visitation with the children. While physical abuse was unsubstantiated as to Babysitter, Mother, and Father, KCDJFS did not reunify because abuse was substantiated as to an unknown perpetrator and based on the unknown nature of the perpetrator, safety of the children was the primary concern.

{¶16} Babysitter testified at the hearing. Babysitter stated on May 24, 2017, she told Mother about an incident with B.B. She testified she was working with B.B. on his core strength by pulling him by his hands from a laying to a sitting position. Babysitter stated B.B. pulled himself down and his head dropped about two inches to the floor. Babysitter testified this incident and the jumperoo incident were the only two events that occurred with B.B. while he was in her care.

{¶17} Dr. Stephen Guertin testified on behalf of Mother and Father as an expert in child abuse. Dr. Guertin agreed B.B.'s injuries were consistent with physical abuse. It was his opinion that Babysitter caused the injuries to B.B. It was Dr. Guertin's medical opinion that the onset of B.B.'s symptoms on May 24, 2017 would be instantaneous to the harm suffered. One issue raised by Dr. Williams was the sudden increase in the circumference of B.B.'s head during his fourth and fifth months. Dr. Williams stated this could indicate that something may have happened intracranially over that period of time considered in conjunction that B.B. suffered a chronic subdural hematoma. Dr. Guertin

testified the increase in B.B.'s head circumference occurred while B.B. was in Babysitter's care.

{¶18} The GAL filed an initial report to the trial court on July 20, 2017. Based on her initial report, the GAL recommended Mother and Father have custody of the children and it was in the best interests of the children for the complaints to be dismissed.

{¶19}   At the time of the hearing, no criminal charges had been brought against any party.

{¶20} On August 29, 2017, the trial court issued its judgment entry finding B.B. was an abused child as defined under R.C. 2151.031(C) and a dependent child under R.C. 2151.04(C). Based on the clear and convincing evidence, the trial court found no dispute that B.B.'s injuries were the result of physical abuse and the injuries to B.B. could have occurred while B.B. was in the care of Mother, Father, or Babysitter. It next found R.B. was a dependent child as defined in R.C. 2151.04(C). The trial court ordered that R.B. and B.B. remain in the temporary custody of KCDJFS and the physical custody of paternal aunt. Mother and Father were permitted visitation with the children at paternal aunt's residence under their supervision.

{¶21} The trial court held a disposition hearing on October 13, 2017. Via judgment entry filed on October 23, 2017, the trial court found it was in the best interests of the children that they be subject to the continuing temporary custody of KCDJFS. Visitation between the parents and children was ordered to be unsupervised at the discretion of KCDJFS. The trial court ordered the parents to follow the case plan established by KCDJFS.

{¶22} A review hearing was held on November 1, 2017. The trial court ordered that custody of the children be returned to Mother and Father and the children would be under protective supervision. (T. 18-19).

{¶23} Mother and Father filed their notice of appeal on November 22, 2017.

## ASSIGNMENT OF ERROR

{¶24} Mother and Father raise one Assignment of Error as to R.B.:

{¶25} "THE DECISION OF THE TRIAL COURT FINDING R.B. TO BE A DEPENDENT CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE?"

## ANALYSIS

{¶26} Mother and Father argue the trial court erred when it found R.B. was a dependent child pursuant to R.C. 2151.04(C). We disagree.

### Standard of Review

{¶27} In an adjudicatory hearing regarding a claim of dependency, neglect and/or abuse, the requisite burden of proof is by clear and convincing evidence. Juv.R. 29(E)(4). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re M.T.*, 5th Dist. Richland No. 18-CA-32, 2018-Ohio-3251, ¶ 47 quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

{¶28} The Ohio Supreme Court delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *See Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 [ (1887) ], *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264 [ (1913) ], and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14 [ (1926) ].

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 [144] Ohio St. 299, 58 N.E.2d 768 [ (1944) ].

161 Ohio St. at 477-478, 120 N.E.2d 118. (Emphasis added).

**A "Dependent Child"**

{¶29} R.C. 2151.04 provides in relevant part,

As used in this chapter, a "dependent child" means any child:

* * *

(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

{¶30} The focus of a charge that a child is dependent under R.C. 2151.04(C) is on the child and his condition and not on the faults of the parents. *In re G. McC.,* 5th Dist. Stark Nos. 2013CA00103, 2013CA00106, 2013-Ohio-5310, ¶ 32 quoting *In re Bishop*, 36 Ohio App.3d 123, 521 N.E.2d 838 (5th Dist.1987); *In re: Bibb*, 70 Ohio App.2d 117, 435 N.E.2d 96 (1st Dist.1980); *In re Riddle*, 79 Ohio St.3d 259, 680 N.E.2d 1227 (1977). In issues of dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." *In re Burchfield*, 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist.1988).

{¶31} In this case, Mother and Father contend the evidence does not support a dependency finding for R.B. under R.C. 2151.04(C). While there is no factual dispute B.B. suffered abuse, no evidence was presented that R.B. suffered physical harm. Mother and Father contend KCDJFS failed to present evidence as to R.B.'s condition or environment.

{¶32} R.C. 2151.04(C) does not require a finding of direct harm to the child to support a dependency finding. "* * * [C]ircumstances giving rise to a legitimate risk of harm may suffice to support a dependency adjudication under R.C. 2151.04(C)." *In re S Children*, 1st Dist. Hamilton No. C-170624, 2018-Ohio-2961, ¶ 36 citing *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1259, 06AP-1263, 06AP-

1264 and Franklin Nos. 06AP-1265, 2007-Ohio-4308, ¶ 62 (children who were not the victims of sexual abuse deemed dependent where sibling had been sexually abused by father); *In re Savchuk Children*, 180 Ohio App.3d 349, 2008-Ohio-6877, 905 N.E.2d 666 (11th Dist.) (infant's multiple and severe injuries that parents could not explain were sufficient to support a dependency finding as to unharmed siblings under R.C. 2151.04(C) ).

{¶33} An appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, 2012 WL 1029466, ¶ 24. The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, 2003 WL 21291042, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶34} There is no factual dispute that B.B. was abused. R.B. and B.B. were simultaneously in the care of Mother, Father, and Babysitter during the time period when

the abuse to B.B. may have occurred. On May 24, 2017, R.B. was two years old, too young to advocate for himself and report any issues in his environment. The lingering question in this case is who abused B.B. The difficult question of who, however, was not before the trial court at the adjudicatory hearing. "The focus of a charge that a child is dependent is on the child and his conditions and not on fault." *In re Pitts, supra* at 3. Under these facts, the clear and convincing evidence showed that R.B. was at a legitimate risk of harm based on the severe injuries suffered by his sibling and the unknown status of the perpetrator.

{¶35} Based upon the foregoing and the entire record in this matter we find the trial court's finding that R.B. was a "dependent child" is not against the sufficiency or the manifest weight of the evidence. We find that there is substantial evidence presented which if believed, proves by clear and convincing evidence that R.B. was a "dependent child."

{¶36} The sole Assignment of Error of Mother and Father is overruled.

## CONCLUSION

{¶37} The judgment of the Knox County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.