[Cite as *In re A.C.*, 2021-Ohio-288.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: A.C.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Earle E. Wise, Jr., J.

Case No. 2020 CA 0053

O P I N IO N

CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of
                              Common Pleas, Juvenile Division, Case
                              No. 2019 DEP 00218

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       February 2, 2021

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER ZUERCHER
GINA NENNIG
TIFFANY BIRD
Richland County Children Services
731 Scholl Road
Mansfield, Ohio  44907

For Mother-Appellant

DARIN AVERY
105 Sturges Avenue
Mansfield, Ohio  44903

Guardian Ad Litem

JOHN DILTS
28 S. Park Street
Mansfield, Ohio  44902

*Hoffman, J.*

**{¶1}** Appellant Myriah Nikolaus ("Mother") appeals the July 7, 2020 Judgment Entry entered by the Richland County Court of Common Pleas, Juvenile Division, which overruled her objection to the magistrate's February 3, 2020 decision, finding her newborn ("the Child") to be dependent, and approved and adopted said decision as order of the court. Appellee is Richland County Children Services ("RCCS").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother gave birth to the Child on October 31, 2019. Upon discharge from the hospital, Mother returned to New Beginnings in Mansfield, Ohio, to continue in-patient treatment for substance abuse. The Child required an extended hospital stay due to breathing issues and was transferred to Nationwide Children's Hospital. At the time of the Child's birth, the alleged father, Adam Chapman ("Father"), was receiving in-patient treatment at Richland County Community Alternative Center in Mansfield, Ohio.

**{¶3}** The trial court placed the Child in the emergency shelter care custody of RCCS upon his release from the hospital on November 12, 2019. On the same day, RCCS filed a complaint, alleging the Child was dependent and/or abused. The complaint asserted Mother was unable to provide for the basic needs of the Child due to her having lost permanent custody of another child, her years long struggle with substance abuse and addiction, her drug use during her pregnancy, her homelessness, and her economic struggles.

**{¶4}** The magistrate conducted an adjudicatory/dispositional hearing on January 31, 2020. The following evidence was adduced at the hearing.

**{¶5}** Mother acknowledged she had abused illegal substances "off and on" for most of a decade. Mother admitted she was actively using until September 21, 2019.

During her pregnancy, Mother abused heroin and cocaine. She tested positive for cocaine and amphetamines on June 14, 2019, and opiates on August 14, 2019. Mother did not recall using amphetamines and surmised the amphetamine could have been in either the heroin or cocaine she had used.

{¶6} Following a traffic stop in June, 2019, Mother was arrested and jailed on a warrant for failure to appear. Mother was in jail for approximately 13 days when she was permitted to leave to secure medical treatment and/or prenatal care. Mother was required to return to jail following her treatment, however, rather than doing so, she absconded with Father. Mother was arrested approximately three weeks later and charged with escape. At another point, Mother was incarcerated on a probation violation for lying to her probation office regarding Father's whereabouts. In late September, 2019, Mother was again arrested. She entered a residential drug treatment facility on October 22, 2019, in lieu of serving additional jail time.

{¶7} Mother had not had stable housing or employment for over six years. She planned to move in with Father when she completed her in-patient treatment program. Father's mother would fund their housing.

{¶8} Mother had lost permanent custody of two children, most recently, her daughter in June, 2018, approximately 17 months prior to the Child's birth. The daughter had a positive toxicology screen at her birth and was immediately removed from Mother's care. After a year, Mother had failed to successfully complete her case plan, which included drug counseling and rehabilitation, and obtaining and maintaining stable housing, and permanent custody was granted to RCCS.

{¶9} During the first 20 weeks of her pregnancy, Mother sought minimal prenatal care, and never revealed her drug use to medical professionals. Mother's prenatal care became more consistent after she was incarcerated as the jail required her to see a doctor. Mother stated the doctors she saw at that time were aware of her drug addiction.

{¶10} Angela Sams, the RCCS intake worker assigned to the family, testified the Child's meconium tested negative for controlled substances, indicating Mother's drug use did not enter or damage the Child's system. As of the date of the hearing, the Child exhibited no signs of withdrawal and was not suffering from neonatal abstinence syndrome.

{¶11} Sams explained RCCS sought emergency shelter care for the Child rather than placing him with Mother at New Beginnings because of the brevity of Mother's current attempt at sobriety and her history of removal of two other children due to unresolved substance abuse issues. In addition, Mother was unable to meet the Child's basic needs. Neither Mother nor Father was employed and had no financial resources to provide for the Child. Mother and Father failed to maintain stable housing in the past and did not have housing secured for when they were released from their respective in-patient programs.

{¶12} Jennifer Howe, Mother's substance abuse counselor, testified Mother fully engaged in her treatment. Mother participated in individual and group therapy. Mother was regularly drug tested and all of her screens were negative. Mother had completed all three phases of the program. Howe explained Mother will continue out-patient treatment at New Beginnings, including individual and group therapy. Howe added Mother had participated in parenting education at Richland Pregnancy Services. Mother

pumped breast milk for the Child. Howe noted Mother would have access to support services to assist her with obtaining basic needs for herself and the Child. Howe expressed concerns about Mother living with Father as both individuals struggle with substance abuse and had a history of abusing substances together. Howe added she believed Mother knew where her healthy boundaries were.

{¶13} After hearing the testimony of all of the witnesses, the magistrate, on the record, found the evidence was insufficient to establish the Child was abused, but found clearing and convincing evidence to establish the Child was dependent. The magistrate memorialized his findings of fact and conclusions of law via decision filed February 3, 2020. Mother filed objections to the magistrate's decision. Via judgment entry filed July 7, 2020, the trial court overruled Mother's objections to the magistrate's decision, and approved and adopted said decision as order of the court.

{¶14} It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN MAKING CERTAIN FINDINGS OF FACT THAT WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE COURT ERRED IN FINDING THE CHILD DEPENDENT BASED ON MOTHER'S HISTORY OF SUBSTANCE ABUSE.

III. THE COURT ERRED IN FINDING THE CHILD DEPENDENT, AS THE EVIDENCE DID NOT SHOW THE CHILD DEPENDENT ON ANY LEGALLY RELEVANT DATE.

IV. THE COURT ERRED IN BASING A FINDING OF DEPENDENCY ON OTHER FACTORS INVOLVING THE MOTHER BUT NOT HAVING AN ADVERSE EFFECT ON THE CHILD.

V. THE COURT ERRED IN BASING A FINDING OF DEPENDENCY ON AN INCORRECT LEGAL STANDARD.

VI. THE COURT ERRED IN FINDING THAT "MOTHER SHOWED NO SIGNS OF HAVING A PLAN OR EXECUTING A PLAN TO ADEQUATELY TAKE CARE OF THE CHILD."

VII. THE COURT ERRED IN FINDING THAT "ALL EVENTS THAT EXISTED PRIOR TO [THE DATE OF THE FILING OF THE COMPLAINT] ARE RELEVANT FOR PURPOSES OF DETERMINING WHETHER [A DEPENDENCY] COMPLAINT HAS BEEN PROVEN."

VIII. THE COURT ERRED IN FINDING REASONABLE EFFORTS TO REUNIFY WITH MOTHER.

I

{¶15} In her first assignment of error, Mother challenges certain findings made by the trial court as against the manifest weight of the evidence. Specifically, Mother challenges the trial court's findings she lacked stable housing and she received "minimal prenatal care." We disagree.

{¶16} When conducting a manifest-weight review, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and

created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶17} A review of the record reveals a few weeks before the Child's birth and at the time of the hearing, Mother was living at New Beginnings, a residential treatment facility. Prior to that, Mother was in and out of jail, or absconding from law enforcement. She had not had her own home in approximately six years. When she completed her treatment program, Mother planned to live with Father, despite both having a history of substance abuse. Mother indicated Father's mother would be funding the residence. Mother sought and obtained minimal prenatal care during the first 20 weeks of her pregnancy with the Child. She did not disclose her drug use to the obstetrician, fearing the doctor would report her to RCCS. Mother also did not disclose her history of high-risk pregnancies. Only when she was incarcerated did Mother received routine prenatal care.

{¶18} Based upon the foregoing, we find the trial court's findings Mother lacked stable housing and received "minimal prenatal care" were not against the manifest weight of the evidence.

{¶19} Mother's first assignment of error is overruled.

II, IV

{¶20} We elect to address Mother's second and fourth assignments together. In her second assignment of error, Mother asserts the trial court erred in finding the Child dependent based upon Mother's history of substance abuse. Specifically, Mother argues her "history of drug abuse was only relevant insofar as 'it [was] demonstrated to have an adverse impact on the child sufficient to warrant state intervention'," and RCCS failed to present any evidence of such an impact. Brief of Appellant at 9. In her fourth assignment

of error, Mother submits the trial court erred in finding the Child dependent based upon her "entanglements with criminal law" and "instability in housing and income."　Mother similarly argues such did not have demonstrable adverse effects on the Child.

**{¶21}** A trial court's adjudication of a child as dependent must be supported by clear and convincing evidence. R.C. 2151.35(A)(1); Juv.R. 29(E)(4). Proof by clear and convincing evidence requires that the evidence " 'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is a higher degree of proof than preponderance of the evidence, but a lower degree than beyond a reasonable doubt. *In re Alexander C.,* 164 Ohio App.3d 540, 2005-Ohio-6134, 843 N.E.2d 211, ¶ 37 (6th Dist.).

**{¶22}** When an appellate court reviews a trial court's adjudication to determine whether the judgment is supported by clear and convincing evidence, the reviewing court must determine whether the trial court had before it evidence sufficient to satisfy the requisite degree of proof. *Id.* at ¶ 7. That is, we conduct a manifest-weight review to determine whether the agency sustained its burden of producing clear and convincing evidence of dependency as defined by R.C. 2151.04. *In re C.T.,* 6th Dist. Sandusky No. S-18-005, 2018-Ohio-3823, ¶ 53. An appellate court will not reverse a trial court's adjudication where competent and credible evidence supports the findings of fact and conclusions of law. *In re Alexander C.,* supra at ¶ 7.

**{¶23}** As relevant here, a dependent child is a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the

child's guardianship." R.C. 2151.04(C). Generally speaking, courts apply R.C. 2151.04(C) broadly to protect the health, safety, and welfare of children. *In re L.H.*, 12th Dist. Warren Nos. CA2018-09-106, CA2018-09-109, CA2018-09-110, and CA2018-09-111, 2019-Ohio-2383, ¶ 41. "A finding of dependency under R.C. 2151.04 must be grounded on whether the children are receiving proper care and support; the focus is on the condition of the children." *In re A.B.C.*, 5th Dist. Stark No. 2011 CA 00073, 2011-Ohio-6570, ¶ 15. As such, a dependency finding "requires no showing of fault, but focuses exclusively on the child's situation * * *." *In re Riddle*, 79 Ohio St.3d 259, 262, 680 N.E.2d 1227 (1997). And although the focus of the trial court's analysis is on the child's present condition or environment, " 'the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm.' " (Brackets sic.) *In re A.B.C.*, supra at ¶ 75, quoting *In re Burchfield*, 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist.1988).

**{¶24}** We find the trial court's finding the Child was dependent is supported by clear and convincing evidence. The evidence presented at the hearing, as set forth in our Statement of the Case and Facts, supra, establishes the Child meets the definition of "dependent child" under R.C. 2151.04(D). Mother had a decade's long history of substance abuse. Mother admitted she actively used heroin and cocaine during her pregnancy. As of the date of the hearing, January 31, 2020, Mother had been clean for only four months, three of which she was in a residential treatment program. She planned to move in with Father, who also had a history of substance abuse. Mother and Father had a history of abusing substances together. Mother had failed to maintain stable housing and employment for the last six years. As the trial court noted, Mother "showed

no signs of having a plan or executing a plan to adequately take care of" the Child.  July 7, 2020 Judgment Entry at 3.  "The state need not subject a child to a potentially detrimental environment." *In re Reese,* 12th Dist. Butler No. CA98–08–169, *4 (April 19, 1999).

**{¶25}** Mother's second and fourth assignments of error are overruled.

III

**{¶26}** In her third assignment of error, Mother maintains the trial court erred in finding the Child dependent as the evidence did not establish the Child was dependent on any legally relevant date. Mother submits RCCS failed to present evidence of " 'the condition or environment of the child' on either November 12, 2019 [the date of the filing of the complaint] or January 31, 2020, the date of the adjudicatory hearing." Brief of Appellant at 10.  We disagree.

**{¶27}** R.C. 2151.23(A)(1) provides: "the determination as to whether a child is dependent must be made as of the date alleged in the complaint, not as of the date of the adjudicatory hearing."  However, in *In re S.A.*, 2012–Ohio–3394, the Second District Court of Appeals recognized a trial court can properly make a finding of dependence based upon a prospective determination.  *Id.* at ¶ 31.  The court explained:

> The underlying reasoning * * * appears to be that as a dependency hearing focuses on the total environment, a court should look not only to the child's present condition but also to the child's potential future environment. * * * By focusing on the environment, which can be viewed and evaluated with or without the child, the legislature has chosen to permit the state to

intercede in familial affairs at [an] early stage. *Id.* at ¶ 31. (Internal citations and quotations omitted.)

**{¶28}** Upon review of the record, we find there was ample evidence to establish the Child was dependent as of the date alleged in the complaint and based upon a prospective determination. Mother was living at New Beginnings, a residential treatment facility, at the time of the adjudicatory hearing. She began her in-patient treatment on October 22, 2019, shortly before the Child's birth. Prior to that, Mother was in and out of jail, or absconding from law enforcement. Mother actively used heroin and cocaine during her pregnancy. As of the date of the hearing, Mother had been clean for only four months, three of which she was in a residential treatment program. Mother had failed to maintain stable housing and employment for the last six years. She planned to move in with Father, who also had a history of substance abuse. Mother and Father had a history of abusing substances together. Mother sought and obtained minimal prenatal care during the first 20 weeks of her pregnancy with the Child and failed to disclose her drug use to the obstetrician. Mother also did not disclose her history of high-risk pregnancies. Only when she was incarcerated did Mother received routine prenatal care.

**{¶29}** Mother's third assignment of error is overruled.

V

**{¶30}** In her fifth assignment of error, Mother suggests the trial court erred in basing its finding of dependency on an incorrect standard.

**{¶31}** At the adjudicatory hearing the magistrate stated, "The standard for dependency is whether it is in the best interest of the minor child that the State assume

[the Child's] guardianship in some way." Transcript of January 31, 2020 Hearing at 108. In his February 3, 2020 decision, the magistrate found "by clear and convincing evidence and based upon the evidence presented that [the Child] is a dependent child as defined in RC 2151.04(C), in that his condition or environment is such as to warrant the state, in [the Child's] best interests, in assuming his guardianship." *Id.* at ¶ 5.

**{¶32}** Mother contends the above-referenced language illustrates the magistrate prematurely considered the Child's best interest which is the focus of the dispositional stage, not the adjudicatory stage. The trial court, in addressing Mother's objection to the same, found:

> The Magistrate did not adopt a best interests standard at the adjudicatory phase. He simply found that at this procedural point it was in the best interests to maintain the child in shelter care pending the dispositional hearing and decision yet to come. July 7, 2020 Judgment Entry at 5.

**{¶33}** We agree with the trial court. When the magistrate's comments are read in conjunction with the remainder of the magistrate's decision, it is evident the magistrate abided by the correct standard in adjudicating RCCS's dependency claim. See, *In re Pieper* (1991), 74 Ohio App.3d 714, 721, 600 N.E.2d 317 (1991); and *In re Adkins* (Feb. 22, 1988), Butler App. No. CA87–03–038, unreported, 1988 WL 21304. We find the trial court correctly focused on the Child's condition.

**{¶34}** Mother's fifth assignment of error is overruled.

VI

{¶35} In her sixth assignment of error, Mother argues the trial court erred in finding she "showed no signs of having a plan or executing a plan to adequately take care of the child."

{¶36} Mother submits her testimony established she had obtained employment and backup employment, had access to public assistance for food, and had independent housing which she was moving into the day of the hearing. Mother also noted she had demonstrated an ability to care for the Child while in the hospital, had engaged in parenting instruction while in treatment, had arranged for continued out-patient care when she completed her in-patient treatment, and was compliant with her probation.

{¶37} At the time RCCS filed the complaint on November 12, 2019, Mother had been in and out of jail throughout the course of her pregnancy. In lieu of completing her jail sentence, Mother entered an in-patient treatment program on October 22, 2019. Mother gave birth to the Child on October 31, 2019. Mother was discharged and returned to New Beginnings to complete her treatment program. The Child was transferred to Nationwide Children's Hospital due to breathing problem. Mother planned to have the Child stay with her at the residential treatment facility. Mother was homeless and unemployed at the time. Mother had not had stable housing or employment for at least six years. She had a decade's long struggle with substance abuse. According to Mother, she and Father intended to live together when she completed her in-patient treatment program. The residence would be funded by Father's mother. Mother also explained she would be "the next one" to fill a position at Burger King, but had not started her employment there. Tr. at 24.

{¶38} Nothing Mother did for the benefit of the Child was voluntary. She went into treatment to avoid jail. She was homeless at that point. Mother did not seek employment until shortly before the adjudicatory hearing, knowing such would be required of her. Based upon the entire record in this matter, we find the trial court did not err in finding Mother "showed no signs of having a plan or executing a plan to adequately take care of the child."

{¶39} Mother's sixth assignment of error is overruled.

VII

{¶40} In her seventh assignment of error, Mother claims the trial court erred in finding "all events that existed prior to [the date of the filing of the complaint] are relevant for purposes of determining whether [a dependency] complaint has been proven." We disagree.

{¶41} Throughout her Brief to this Court, Mother takes issue with the trial court's failure to favorably view the progress she had made between October 22, 2019, when she entered residential treatment, and January 31, 2020, the date of the adjudicatory hearing. Herein, however, she suggests the trial court should only view the Child's condition or environment as of the date of the filing of the complaint without consideration of the events which led to such filing. An allegation of dependency is not made in a vacuum. In this case, Mother's history of drug use and incarceration during her pregnancy effected the condition or environment of the Child at his birth.

{¶42} To reiterate the evidence, Mother was in and out of jail, or absconding from law enforcement throughout her pregnancy. She entered residential treatment to avoid additional jail time. She abused drugs during her pregnancy. As of November 12, 2019,

she had been clean for less than two months. She had a decade's long history of drug abuse. Mother had had unstable housing and employment for the last six years. All of this is relevant to a determination of dependency.

**{¶43}** Mother's seventh assignment of error is overruled.

VIII

**{¶44}** In her final assignment of error, Mother argues the trial court erred in finding RCCS made reasonable efforts to reunify the Child with her.

**{¶45}** "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16. " 'Reasonable efforts' does not mean all available efforts." *Id.* A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992).

**{¶46}** Mother submits she "had suitable means to provide for the child at the treatment facility. . .where she had resided since October 22, 2019. . ., and could thus provide for the child upon leaving from the hospital on November 12, 2019," and, although RCCS was aware of this fact, the agency chose to place the Child in a foster home, the most restrictive option. Brief of Appellant at 15. Mother adds RCCS "presum[ed] authority to determine the child's best interest prior to even a dependency finding." *Id.*

**{¶47}** Ohio Admin. Code 5101:2-42-05 provides, in pertinent part:

(E) When the PCSA or PCPA has temporary custody of a child, it shall select a substitute care setting that is consistent with the best interest and special needs of the child and that meets the following criteria:

(1) Is considered the least restrictive, most family-like setting available to meet the child's emotional and physical needs.

(2) Is in close proximity to the home from which the child was removed or the home in which the child will be permanently placed.

(3) Is in close proximity to the school in which the child was enrolled prior to placement.

(4) Is designed to enhance the likelihood of achieving permanency plan goals.

(5) Is able to provide a safe environment for the child.

(F) The following allowable substitute care settings are listed in order from least restrictive to most restrictive:

(1) With the parent in a substance use disorder (SUD) residential facility.

* *

(4) A foster home.

* *.

{¶48} Mother tries to conflate the best interest finding necessary to terminate parental rights with an agency choosing a placement consistent with the child's best

interest.  An agency may not make arbitrary decisions regarding the placement of a child, but a placement must adequately meet the needs of the child.

**{¶49}** Mother had spent only nine day in the residential treatment facility prior to the Child's birth.  Her housing had been unstable for years.  Mother had been in and out of jail, or absconding from the law in the months preceding the Child's birth.  Mother entered the residential treatment facility as a means to avoid additional jail time.  Upon her discharge from the hospital after giving birth, there was no indication Mother could consistently and safely meet the Child's needs.  She would be solely dependent upon the treatment facility to provide everyday essentials for the Child.

**{¶50}** Under these circumstances, we find the record demonstrates RCCS complied with Ohio Adm.Code 5101:2–42–05(E)(1) by selecting a substitute care setting which "[was] considered the least restrictive, most family-like setting available to meet the child's emotional and physical needs." See, *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733. We find the trial court did not err in finding RCCS made reasonable efforts.

**{¶51}** Mother's eighth assignment of error is overruled.

**{¶52}** The judgment of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concur