[Cite as *In re L.L.*, 2023-Ohio-3032.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: L.L. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 23CA0011 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Coshocton County
Court of Common Pleas, Juvenile
Division, Case No. 20233010

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      August 28, 2023

APPEARANCES:

For Appellant Mother:                For Appellee Coshocton DJFS:

JETTA MENCER                         FREDERICK A. SEALOVER
P.O. Box 1115                        725 Pine Street
Columbus, OH 43216                   Coshocton, OH 43812

*Delaney, J.*

{¶1} Appellant Mother appeals from the April 3, 2023 Judgment Entry of the Coshocton County Court of Common Pleas, Juvenile Division, finding minor child L.L. to be a dependent child. Appellee is the Coshocton County Department of Job and Family Services ("Agency").

## FACTS AND PROCEDURAL HISTORY

{¶2} This case arose on February 13, 2023, when John Doe (D.O.B. 1/25/2023) was only a few weeks old. John Doe is the son of Mother and Father.[1] Mother has several other biological children including Jane Doe, who was age 15 at the time of these events.[2]

{¶3} Caseworker is the ongoing supervising caseworker assigned to Mother's children who testified at the adjudication hearing. She has over ten years of experience in child welfare with the Agency, in addition to 2 years as a Head Start home visitor and 5 years as a drug and alcohol counselor for adults and juveniles. Caseworker is not licensed in mental health but has dealt with many dual-diagnosis (substance abuse and mental health) patients in her career. The primary function of her current position is making judgments about whether the Agency should file complaints or reunite families, and whether parents and children should have contact with each other. Caseworker testified that based upon her training and experience, she is able to determine whether a

---

[1] Parties at the adjudicatory hearing included Presumed Father by marriage and Alleged Father, neither of whom are parties to the instant appeal.

[2] Mother's total number of biological children is not evident in this record. The instant case involves the newborn John Doe; also mentioned are Jane Doe, age 15, and another infant in a high chair who will be referred to as James Doe. It is also not evident from the record which of John Doe's siblings are the subject of other pending action(s) by the Agency which are the source of the argument between Mother and Jane Doe.

child lacks proper care due to the mental condition of a parent, and she used this training and experience to guide her actions in the instant case.

{¶4} On February 13, 2023, Caseworker received a call that Mother and Jane Doe had an argument. Caseworker left her office immediately and met Jane at a friend's house a few blocks away.

{¶5} Upon Caseworker's arrival, Jane was in the living room, upset and crying, not interacting with anyone. Caseworker identified herself, told Jane why she was there, and initiated a conversation. Jane said she argued with Mother in the car because Mother blamed her for the potential removal of her siblings by the Agency. Jane said she was kicked out of the car and walked to the friend's house. Caseworker explained that the Agency's involvement was not Jane's fault. Caseworker asked Jane how things were going at home and Jane became tearful again.

{¶6} Caseworker left Jane at the friend's house and attempted to contact Mother to discuss Jane's allegations, make arrangements for Jane, and assess the other siblings including John Doe. Caseworker was unable to reach Mother for three hours; in the meantime, Caseworker visited the home twice, called Mother and left a voice mail, asked law enforcement to help locate Mother, and drove by the residence to look for Mother's van.

{¶7} Eventually law enforcement contacted Caseworker with information that Mother was pulled over with her children in the van, minus Jane. Caseworker asked law enforcement to follow Mother home so she could meet with her to address the Agency's concerns.

{¶8} When Caseworker arrived at the residence, Mother had just pulled in with the children in the van. Mother carried John Doe into the residence and permitted Caseworker to come inside. Inside the home, three children were present; two were John Doe and James Doe, who was seated in a high chair and described as "fussy."

{¶9} Caseworker spoke to Mother and reviewed her conversation with Jane. Mother blamed Jane for the Agency's involvement with the family and Caseworker asked Mother to address what role Mother played in the Agency's concerns. Mother's demeanor was upset and tearful.

{¶10} Caseworker testified that based upon Mother's emotional state, she was concerned about her ability to care for a child as young as John Doe; in her opinion, Mother's mental condition and distress created an inappropriate environment for a newborn. Caseworker attempted to formulate a safety plan with Mother and filed the instant dependency complaint because Mother would not agree to a proposed safety plan.

{¶11} When asked for the basis of the complaint, Caseworker testified Mother's emotional ups and downs unduly stressed the children; Mother would not agree to a safety plan; and Mother admitted concern for her own emotional well-being. Caseworker noted additional concerns on cross-examination. Mother did not know where Jane Doe was or make any attempt to locate her after the heated argument in the vehicle. Caseworker learned that although Mother agreed to a temporary safety plan of Great-Grandmother spending the night at the residence to relieve pressure on Mother, Great-Grandmother did not remain at the residence. The family had a court hearing the next day regarding custody of the other children (not including John Doe).

{¶12} The trial court found John Doe to be a dependent child, ruling from the bench at the adjudicatory hearing. The trial court stated the following in pertinent part:

> Okay. The matter is before the Court for determination. The grounds alleged in the complaint as a dependent child identify two, lack of proper care and support by the reason of mental and physical condition of a parent, guardian, or custodian. Subpart C was condition or environment as such to warrant the State in the interest of the child in assuming this guardianship. Clearly, as argued by [Mother's counsel], the evidence is fairly thin in terms of what goes on in this particular incident. And, under subpart B, the Court would struggle to make a finding. But subpart C is such a broad and it's been interpreted that way (*sic*), condition or environment such as to warrant the State in the interest of a child in assuming a guardianship. And, frankly, the bigger picture and the larger issue at stake that was occurring at the time—and February 14th is when this gets weighed—at the time, is of a mother struggling because of a lot of other circumstances in her life, meaning other kids, other court hearings, significant issues, long-term involvement with the agency leading up to those, and dispositive motions that would lead to a level of finality that would be difficult for any parent. So, obviously, a parent struggling with that and, in this particular situation, a blow-up with a child who is 15, which I would grant you happens with 15-year-olds, but, frankly, it seems like the bigger or the full story here is the

child who is kicked out of the van and not provided for and not followed up on for hours and a difficult time trying to track down a mother. So, it certainly seems as if there's more evidence here than maybe what is being argued, but I'm not faulting counsel. I'm just pointing out that there is some record here to support a condition or environment in the interest of the State in assuming the child's guardianship. The Court's going to find a dependency on that basis.

\* \* \* \*.

T. 28-30.

{¶13} The trial court journalized its decision in a judgment entry dated April 3, 2023.

{¶14} Mother now appeals from the trial court's entry of April 3, 2023.

{¶15} Mother raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶16} "THE TRIAL COURT ERRED IN FINDING L.L. TO BE A DEPENDENT CHILD PURSUANT TO R.C. 2151.04(C)."

**ANALYSIS**

{¶17} In her sole assignment of error, Mother argues the trial court's finding of dependency is not supported by clear and convincing evidence. We disagree.

{¶18} Pursuant to R.C. 2151.04(C), a dependent child is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" A finding pursuant to R.C. 2151.04(C) does not require parental or custodial fault. The focus is on the child's condition and whether the child is a

victim, regardless whom the responsible party is. *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 19. "The conduct of the parent is relevant only insofar as it forms a part of the child's environment and it is significant only if it has a detrimental impact on [him]." *In re A.C., C.C., and C.S.*, 9th Dist. Wayne Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, ¶ 14.

{¶19} Generally speaking, courts apply R.C. 2151.04(C) broadly to protect the health, safety, and welfare of children. *In re L.H.*, 12th Dist. Warren Nos. CA2018-09-106, CA2018-09-109, CA2018-09-110, and CA2018-09-111, 2019-Ohio-2383, ¶ 41. "A finding of dependency under R.C. 2151.04 must be grounded on whether the children are receiving proper care and support; the focus is on the condition of the children." *In re A.B.C.*, 5th Dist. Stark No. 2011 CA 00073, 2011-Ohio-6570, ¶ 15. As such, a dependency finding "requires no showing of fault, but focuses exclusively on the child's situation * * *." *In re Riddle*, 79 Ohio St.3d 259, 262, 680 N.E.2d 1227 (1997). And although the focus of the trial court's analysis is on the child's present condition or environment, " 'the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm.' " (Brackets sic.) *In re A.B.C.*, supra at ¶ 75, quoting *In re Burchfield*, 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist.1988).

{¶20} "The state bears the burden of proof of establishing that a child is abused, neglected, or dependent." *Matter of: L.H.*, 12th Dist. Warren No. CA2018-09-106, 2019-Ohio-2383, ¶ 20. "The Ohio Supreme Court has defined 'clear and convincing evidence' as '[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.' " *Matter of J.B.*, 5th

Dist. Stark Nos. 2022CA00086, 2022CA00087, 2022CA00088, 2022-Ohio-3895, ¶ 22, quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). A trial court's adjudication of a child as dependent must be supported by clear and convincing evidence. R.C. 2151.35(A)(1); Juv.R. 29(E)(4). Proof by clear and convincing evidence requires that the evidence " 'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is a higher degree of proof than preponderance of the evidence, but a lower degree than beyond a reasonable doubt. *In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, 843 N.E.2d 211, ¶ 37 (6th Dist.).

{¶21} When an appellate court reviews a trial court's adjudication to determine whether the judgment is supported by clear and convincing evidence, the reviewing court must determine whether the trial court had before it evidence sufficient to satisfy the requisite degree of proof. *Id.* at ¶ 7. That is, we conduct a manifest-weight review to determine whether the agency sustained its burden of producing clear and convincing evidence of dependency as defined by R.C. 2151.04. *In re C.T.*, 6th Dist. Sandusky No. S-18-005, 2018-Ohio-3823, ¶ 53. An appellate court will not reverse a trial court's adjudication where competent and credible evidence supports the findings of fact and conclusions of law. *In re Alexander C.*, supra at ¶ 7.

{¶22} In the instant case, the Agency presented evidence that the family was in turmoil after Mother and Jane Doe argued in the van; Jane exited the vehicle in some fashion and Mother did not know her whereabouts or look for her. The subject of this

dependency action, though, is John Doe, the newborn who remained in the van with Mother and was then brought inside the house.

{¶23} When Caseworker made contact with Mother, emotions were still running high, to the extent that Mother told Caseworker she was concerned for her own mental state (T. 18) but did not know where her daughter was or attempt to locate her (T. 24). In the Caseworker's training and experience, Mother's mental condition and emotional distress did not create an appropriate environment for a weeks-old child. T. 18. The family had a hearing regarding custody of Mother's other children the next day and Caseworker deemed this to be a high-stress situation for Mother. T. 24-25. Upon formulating the temporary safety plan of Great Grandmother staying with the family to provide relief, however, Caseworker later learned Great Grandmother did not remain at the residence. T. 26. Upon our review of the record, we find the trial court's concerns for newborn's environment are supported by clear and convincing evidence. We have previously found that "circumstances giving rise to a legitimate risk of harm may suffice to support a dependency adjudication under R.C. 2151.04(C)." *In re R.B.*, 5th Dist. Knox No. 17CA22, 2018-Ohio-4086, ¶ 32, citing *In re S Children*, 1st Dist. Hamilton No. C-170624, 2018-Ohio-2961, ¶ 36, internal citation omitted.

{¶24} We conclude the trial court's finding that John Doe is a dependent child pursuant to R.C. 2151.04(C) is supported by sufficient evidence. *See, In re A.C.*, 5th Dist. Richland No. 2020 CA 0053, 2021-Ohio-288, *appeal not allowed,* 163 Ohio St.3d 1440, 2021-Ohio-1896, 168 N.E.3d 1199, *reconsideration denied,* 164 Ohio St.3d 1406, 2021-Ohio-2742, 172 N.E.3d 172 [mother "showed no signs of having a plan or executing a

plan to adequately take care of" child and state need not subject a child to a potentially detrimental environment].

{¶25} Mother's sole assignment of error is overruled.

## CONCLUSION

{¶26} The sole assignment of error is overruled and the judgment of the Coshocton County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.